126:38 LRA74

## WILLIAM MEYER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon April 2, 1895.*

1. EVIDENCE—*proof of previous insanity will not acquit of crime.* Proof that one accused of assault was confined in an insane asylum some years previously, with the opinions of witnesses that his insanity continued to the time of the assault, is insufficient to relieve him of criminal liability, where he is shown to have transacted business in the ordinary manner for several years.

2. CRIMINAL LAW—*degree of insanity which will relieve one accused.* Unsoundness of mind, to relieve from criminal liability, must be of such a degree as to create an uncontrollable impulse to do the act charged, by overriding the reason and judgment and obliterating the sense of right and wrong as to the particular act done, and depriving the accused of the power of choosing between them.

3. SAME—*assault to murder—striking with fist is not.* A conviction of assault with intent to murder will be reversed, where the evidence shows the defendant merely struck the prosecuting witness with his fist, inflicting a cut on her face and a bruise on her head, although the assault was without provocation.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

E. R. DAVIS, for plaintiff in error:

The presumption of law is, that where insanity is once established by proof it continues, and the burden is on the prosecution to show that the defendant has recovered his reason. *Anderson* v. *Cranmer*, 11 W. Va. 562; *Jarrett* v. *Jarrett*, id. 584; *Hoge* v. *Fisher*, Pet. (C. C.) 163; *Stevens* v. *Van Cleve*, 4 Wash. (U. S.) 262; *Goodell* v. *Harrington*, 3 Thomp. & C. 645.

Chronic insanity is presumed to continue. *Carpenter* v. *Carpenter*, 8 Bush, 283; *State* v. *Brinyea*, 5 Ala. 244; *Hix* v. *Whittemore*, 4 Metc. (Mass.) 545; *Saxon* v. *Whitaker*, 30 Ala. 237; *State* v. *Reddick*, 7 Kan. 143; *Ballem* v. *Clark*, 2 Ired. L. 23; *Hoge* v. *Fisher*, Pet. (C. C.) 163; *Breed* v. *Pratt*, 18 Pick. 115; *Sprague* v. *Duel*, 1 Clark, 90; *State* v. *Spencer*,

1 Zabr. 197; *Ripley* v. *Babcock*, 13 Wis. 425 ; *State* v. *Whitner*, 40 id. 304; *Wade* v. *State*, 37 Ind. 180.

MAURICE T. MOLONEY, Attorney General, T. J. SCO-FIELD and M. L. NEWELL, of counsel, and M. W. SCHAE-FER, State's Attorney, for People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an indictment returned by the grand jury of St. Clair county against William Meyer for an assault with the intent to commit murder.   The indictment contained two counts.  In the first it is charged that the defendant, on the 11th day of July, 1893, with a deadly weapon, to-wit, a certain knife, upon the person of one Lizzie Hartman did then and there unlawfully, maliciously and feloniously make an assault, with the intent then and there, unlawfully, maliciously and feloniously, the said Lizzie Hartman then and there, with malice aforethought, to kill and murder, contrary to the form of the statute, etc.   The second count was like the first, except it is charged that the assault was made with a sharp instrument.   To the indictment the defendant pleaded not guilty, and on a trial before a jury the defendant was found guilty as charged in the indictment, and his term of imprisonment was fixed at eight years in the penitentiary.

Upon an examination of the evidence introduced on the trial it appears that the defendant and Lizzie Hartman both resided in East St. Louis.   The defendant, for some time before the assault, had been in the habit, when not engaged at work, of spending his time at Hempe's store, in East St. Louis.   Lizzie Hartman had been in the habit of visiting her sister, who resided above the store.   In making these visits she was often seen by the defendant, and it seems, from the evidence, that he became infatuated with her.   He called at her home, and on several occasions asked. permission to visit her and

keep her company, but his requests were all refused by her. On or about the 9th of July, 1893, Meyer called at her residence in the evening, and upon reaching the gate he discovered a young man sitting on the porch with her. This seemed to enrage him, and he used foul language respecting the girl, and made threats of personal injury. On the following Tuesday morning, July 11, she left her home and started to go to her sister's, who resided over Hempe's store. Just before she reached there the defendant came out of the store, met her on the street, and, so far as appears, without cause or provocation struck her on the head and face and knocked her down.

Two grounds are relied on to reverse the judgment: First, it is claimed that the defendant was insane at the time the assault was committed; and second, it is insisted that the evidence is insufficient to sustain the conviction,—that the evidence fails to show that the assault was inflicted with a knife or sharp instrument, as charged in the indictment.

The defendant, on the trial, called no witnesses to prove insanity, but relied solely on an affidavit for a continuance, which was admitted by the State's attorney. In the affidavit it is alleged that defendant expects to prove by "Drs. Heeley and Starkle that they examined the defendant some two or three weeks ago, and that their opinion then was that the defendant was insane. Affiant further expects to prove by said George Meyer that he is the brother of the defendant, and that he visited him while he, the defendant, was confined in the insane hospital at Anna, in this State; that the defendant was there for five years as an insane man, and that he is still insane. Affiant expects to prove by said Joseph Meyer, the father of the defendant, that he has lived on the same lot where the defendant has lived the last year before the happening of this trouble, and that he knows from the acts and conduct of the defendant during that time that he, the defendant, is and was insane; he also

knows that the defendant was confined in the insane house at Anna, as aforesaid, for five years.  Affiant expects to prove by said Louisa Blass that she is the sister of the defendant, and boarded him at her house for three years after he came back from Anna, and that she knows the defendant never recovered from his insanity which he had when he was at Anna, judging from his conduct while he was at her house; that she had to turn him away because she feared him on account of his insane acts. That affiant expects to prove by said Thomas Rogers that he is well acquainted with the defendant, and that his opinion is that the defendant is insane, and has been for years."  It is not disclosed by the affidavit when the defendant was in the insane hospital at Anna, but the testimony introduced on behalf of the People shows that for four years next before the assault the defendant had constantly worked in a rolling mill in East St. Louis, receiving good wages and investing the same, and transacting business as other people.

We do not regard the evidence sufficient to establish that the defendant was afflicted with insanity to such an extent as to deprive him of the capacity of distinguishing between right and wrong.  He may have been afflicted with insanity, but to excuse the act, as said in *Hopps* v. *People*, 31 Ill. 385, the "unsoundness of mind or affection of insanity must be of such a degree as to create an uncontrollable impulse to do the act charged, by overriding the reason and judgment, and obliterating the sense of right and wrong as to the particular act done, and depriving the accused of the power of choosing between them." (*Dunn* v. *People*, 109 Ill. 635; *Lilly* v. *People*, 148 id. 467.)  Neither the facts set out in the affidavit nor the evidence introduced on the trial brings the case within the rule laid down in the cases cited.

The second ground relied upon to reverse the judgment involves a more serious question.  It will be observed that the indictment is framed under section 23 of

chapter 38 of the Criminal Code, which provides: "An assault with an intent to commit murder * * * or other felony shall subject the offender to imprisonment in the penitentiary for a term not less than one year nor more than fourteen years." Section 22 of the same chapter provides: "Whoever shall be guilty of an assault, or an assault and battery, shall be fined not less than $3 nor more than $100." Section 25 provides: "An assault with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, * * * shall subject the offender to a fine not exceeding $1000 nor less than $25, or imprisonment in the county jail not exceeding one year, or both." There is no question here in regard to the assault, but the question is whether the assault falls under section 22, 23 or 25 of the Criminal Code. This question, or at least the question whether defendant was guilty of an assault with an intent to murder, as provided by section 23, must be determined from an examination of the evidence.

The prosecuting witness testified: "Next I saw of him was on the 11th day of July, 1893. I left our house, about three blocks from Hempe's store, to go to my sister's, who lived over Hempe's store, about eight o'clock in the morning, and just before I got to Hempe's store he came up to me and started to say something, and I wanted to say he did have no right to speak to me, the way he cursed me Sunday night, but he did not give me time to say that. He struck me in the face, and knocked me on the head with his fist. My face was scratched and my head some swollen, and from the fall I was bruised and hurt. He struck me with his hand on the face. I did not see anything in his hand." In answer to the question, "Did he have anything in his hand?" she stated: "I did not notice that. I could not swear whether he had anything in his hand or not."

The physician who was called upon to examine the prosecuting witness after the assault, testified : "I found a wound over her left eye, and also a blood tumor on the top of her head about the size of an egg. The wound over her eye was about one and a half inches long and about a quarter of an inch deep. It seemed to be a cut— to what we call the covering of the bone.

Q. "State what the character of it was—whether it was a bruise, contusion or a cut.

A. "It seems to be a cut; it was a cut.

Q. "You swear to the jury that it was a cut?

A. "Yes, sir.

Q. "From the appearance of that wound, what will you say was it made by, if anything ?

A. "It was made by some sharp instrument."

The next witness in regard to the assault was Mary Combs. She testified that she lived across the street from Hempe's store ; that she was sick on that day, and was sitting up in bed eating watermelon, and from where she was she could see Hempe's store front ; that she saw Billy Meyer at Hempe's store that day and for two or three days before ; that she saw this young lady pass along there that day between eight and nine o'clock that morning ; that before the girl came along Meyer was whittling inside and picking his finger-nails with his knife, and as soon as the girl came in sight he walked out towards her, slapped her twice and knocked her down, stepped over, and then kicked her.

Q. "Then you saw him strike at her with a knife?

A. "Yes, sir.

Q. "Are you sure about that?

A. "I am sure he had a knife."

The next witness called by the People was Mrs. Hooper, who was in the same room with the last witness. She saw the defendant, but was not able to testify whether he had a knife in his hand or not. On the other hand, from the testimony of Hempe it appears that he

saw the defendant just before the assault, and stood near him, and says defendant had no knife in his hand.

From the foregoing evidence (and no other witnesses were called upon to testify to the assault) it appears no witness testified that the assault was made with a knife or any other weapon. The prosecuting witness would not swear that the defendant had anything in his hand. The physician gave it as his opinion that the cut was made with a sharp instrument; but that was a mere opinion, as liable to be incorrect as correct. Mary Combs testified that the defendant had a knife in his hand, whittling, at the store, but when asked if she was sure the defendant struck with the knife would only say he had a knife. Moreover, this witness, as appears from her own evidence, was, at the time of the assault, sick in bed, and saw what she did through a window from the second story of a building. Under such circumstances, what she said in regard to the defendant having a knife in his hand is not entitled to as much weight as the evidence of Hempe, who stood near by and saw the defendant, and testified that he had no knife in his hand.

But without any further reference to the evidence in detail, after giving it all due consideration we do not think that it shows, beyond a reasonable doubt, that the defendant made the assault with a knife or any other sharp instrument. If there had been an assault with a knife, the jury might have been justified in finding that there was an assault with intent to murder; but, on the other hand, if the evidence shows, as we think it does, that the defendant met the prosecuting witness in the street and struck her with his fist, inflicting a cut on her face and a bruise on the head, how can it be held that the defendant is guilty of an assault with intent to murder? While we are free to concede that the assault was without provocation, and may be regarded as a low, cowardly act, yet we are not prepared to hold that an assault of that character falls within section 23 of the Criminal

Code, *supra,* which subjects an offender to imprisonment in the penitentiary for not less than one nor more than fourteen years. The defendant was guilty of a crime, for which the law imposes a penalty, but we do not think he was guilty of the offense for which he was convicted.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*