(No. 6184.   May 11, 1935.)

STATE, Respondent, v. GUY E. GOULD, Appellant.

[44 Pac. (2d) 1114.]

W. A. Ricks, for Appellant.

590

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

HOLDEN, J.—Appellant was convicted of the crime of statutory rape, and appeals.

It is not contended that the evidence is insufficient to prove that appellant, a man twenty-six years of age, actually had sexual intercourse with the prosecutrix, a female child thirteen years of age, at the time and place and as charged in the information. That the appellant actually had sexual intercourse with the prosecutrix is tacitly admitted, but it is contended that "the appellant's evidence tended to show that he was a moron, and that his mind was so diseased and disordered to such an extent that he was not accountable under the law. His evidence further tended to show that he could neither read nor write, and that his intelligence was of the lowest order."

Dr. H. B. Rigby, appellant's alienist, testified concerning the mental capacity of the appellant, as follows:

"Q. Doctor, do you think the defendant had sufficient mental capacity to appreciate the act? Do you not? He knew what he was doing? If he did, in fact, as a matter of

fact, perpetrate the crime of rape, do you think he knew what he was doing?

"A. Well, I think he did.

"Q. And you think also that if, as a matter of fact, the defendant did commit the crime of rape, he knew it was wrong to do so?

"A. Well, I think he has enough intelligence to appreciate that.

"Q. And if I understand your testimony correctly, it is this: That this man is neither an idiot, a lunatic, or an insane person?

"A. I think he rates above either an idiot or an imbecile. And that his classification, if you are going to put him in that classification, you wouldn't hardly call him an imbecile or an idiot, but I think he is in the moron group."

Appellant's sister testified:

"Q. Do you know whether or not he (appellant) went to school?

"A. Yes; he went to school to about the sixth grade, I imagine.

"Q. Do you know why he quit?

"A. Well, he got too big to go, and of course the kids made fun of him, and he couldn't learn.

. . . . . . . . . . .

"Q. You think that he is as smart as his neighbors, or smarter than his neighbors?

"A. He is just as smart.

. . . . . . . . . . .

"Q. Do you think your brother knows the difference between right and wrong?

"A. Yes sir.

"Q. Do you think he has sufficient intelligence to know that it is wrong to rape?

"A. I do.

"Q. Do you think he has sufficient intelligence to know that it is wrong to steal?

"A. I do.

"Q. Do you think he has sufficient intelligence to appreciate the consequences of a criminal act if it was committed by him?

"A. Oh, I think he does.

"Q. You think he would know that he would be punished for it?

"A. I do."

Appellant's brother testified:

"Q. Do the neighbors out in East Wilford pick on the defendant?

"A. Yes, sir; quite a lot.

"Q. Why do they do that, do you know?

"A. Well, they just think they are smart.

"Q. Now, are you like your sister? You think that he is as smart as they are, don't you?

"A. Yes sir.

"Q. You think that he is just as smart as they are?

"A. Yes sir."

Appellant's father testified:

"Q. Did he ever run your threshing machine?

"A. He run the engine.

"Q. For how long was he running the engine?

"A. Oh, it must have been five or six years.

"Q. Now, as a matter of fact, it takes an average person, does it not—speaking from the standpoint of intelligence, and so forth—to operate a threshing machine?

"A. Well, in a way it does. Still, there is not so much to a steam engine, you know."

.  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Do you believe, Mr. Gould, that the defendant would know that to go out at night, in the night time—assuming that that is the case—and attack a girl would be wrong?

"A. Well, he might, and he might not.

"Q. Well, now what is your opinion?

"A. Well, he isn't very smart that way, oh, no."

And the appellant himself testified:

"Q. You knew it would be wrong to do that with a girl that age?

"A. Yes sir.

"Q. And that is the reason you wouldn't do it, isn't it?

"A. Yes sir.

"Q. Of course. You knew if you did something like that, and you got caught, something might happen to you, didn't you?

"A. Yes sir.

"Q. And you know that is the fact now?

"A. Yes sir.

. . . . . . . . . . .

"Q. Now, you wouldn't do that with a girl of that age, because you know that would be wrong?

"A. Yes sir.

"Q. And that you would be punished for it if you were caught?

"A. Yes sir."

Upon the question of the mental capacity of appellant, the court instructed the jury as follows:

"You are instructed that under the laws of this state a female child under the age of eighteen years is incapable of giving legal consent to an act of sexual intercourse, so that every act of carnal connection with such a child by one not her husband will constitute the crime of rape, whether with or without the consent of such child; and, in this case, if you believe from the evidence, beyond a reasonable doubt, that the defendant had sexual intercourse with the prosecuting witness, on or about the 3rd day of March, 1934, as alleged in the information, and that at the time she was under the age of eighteen years, and not the wife of the defendant, then the defendant is guilty of rape, and you should so find. Unless you have a reasonable doubt that he had, at the time, sufficient mental capacity to understand the nature and consequences of his acts."—Instruction No. 4.

"You are instructed that if you should find that the defendant did not, as alleged, have and accomplish an act of sexual intercourse with and upon the person of the prosecutrix, by actual penetration, that is, if you believe that

actual penetration has not been shown beyond a reasonable doubt, but should believe beyond a reasonable doubt, from the evidence, that the defendant did, in this county, at or about the time alleged in the information, make an assault upon the prosecutrix (naming her) with the intent to commit the crime of rape, you will, in that event, find the defendant guilty of assault with intent to commit rape. Provided, however, that you further find, beyond a reasonable doubt, that the prosecutrix was then and there a female person under the age of eighteen years, and not the wife of the defendant; and that the defendant had sufficient mental capacity to understand the nature and consequences of his acts.''—Instruction No. 10.

''If you find the defendant not guilty of rape, and not guilty of attempt to rape, and not guilty of assault with intent to commit rape, but should find from the evidence, beyond a reasonable doubt, that at the time and place alleged in the information, the defendant committed an assault upon the prosecutrix, as that term is defined to you in these instructions, then you will find the defendant guilty of assault, as charged in the information; provided, that you find, beyond a reasonable doubt, that the defendant had sufficient mental capacity to understand the nature and consequences of his acts.''—Instruction No. 11.

''Gentlemen of the jury, you are instructed that should you first find, beyond a reasonable doubt, that the defendant had sexual intercourse with (naming the prosecutrix); that she was under the age of eighteen years, and not the wife of the defendant, then the court instructs you gentlemen, that the true test and standard of accountability is: Had the defendant sufficient mental capacity to appreciate the character and quality of his act? Did he know and understand that it was in violation of the rights of another and in itself wrong? Did he know that it was prohibited by the laws of the state and that its commission would entail punishment and penalty upon himself. If he had the capacity thus to appreciate the character and comprehend the possible or probable consequences of his acts, he is

responsible to the law for the acts thus committed, however deficient mentally he may otherwise have been, and is to be adjudged accordingly. A person in the possession of a sound mind who commits a criminal act under the impulse of passion, which may temporarily dethrone reason, or for the time being control his will, cannot be shielded from the consequence of his act.''—Instruction No. 15.

''Gentlemen of the jury, you are instructed that under the plea of not guilty, testimony as to the sanity or the insanity of the accused may be introduced. Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crime, until evidence is presented that may cause a reasonable doubt of the sanity of the accused. If at the time of committing the act charged the accused was laboring under such a defective reason as not to know the nature and quality of the act he was doing, or, if he did know the nature and quality of the act, but did not know he was doing what was wrong, he should be acquitted. But, a man may lack the capacity to distinguish between the various shades of illegality which the law assigns to a particular act, and yet be sane. This is not what is meant by the power of distinction between right and wrong as one of the tests of insanity, and because an accused has not the mental capacity to know whether an act is legal or illegal, or believes his act to be legal, is no defense. The meaning of the law is that he had not the mental capacity to know that he was doing a moral wrong. If the mind of the accused was not so defective at the time of the commission of the act charged as to prevent him from knowing the nature and quality of his act, or if he did know the nature and quality of his act, his mind was not so defective as to prevent him from knowing that he was morally doing a wrong, he had sufficient mental capacity to be responsible for his acts. You should keep this test in mind in determining the sanity of the accused, and if from the evidence you have a reasonable doubt as to whether the defendant was insane you should acquit him.'' Instruction No. 16.

And the court also charged the jury that:

"The instructions given you by the court should be considered together. You should not single out any one instruction and draw from it an unreasonable conclusion, but you should consider it in connection with all the other instructions, and thus taken altogether under your oaths as jurors you must accept the law. You are to draw no inference whatever as to the facts in the case from the instructions given you by the court. The court instructs as to the law, without reference to whether the evidence introduced upon the subject instructed upon is satisfying and convincing, or as to whether it is simply slight or unconvincing."—Instruction No. 25.

The specific grounds upon which a reversal of the judgment of conviction is sought, are: First, that the trial court, in its instructions to the jury, did not correctly define insanity. Second, that the court erred in refusing to give appellant's requested instruction No. 1, to the effect that the burden was upon the respondent to prove that appellant was capable of forming a criminal intent. And, third, that the court erred in giving instruction No. 16, in that it is contended that such instruction assumed that appellant was guilty.

It is contended by appellant that "one who, by reason of mental disease, has lost the power to control his actions and choose between right and wrong, is not responsible to the criminal law for an act which is solely the product of such disease, although he may know right from wrong," citing *Parsons v. State*, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193, and *Bell v. State*, 120 Ark. 530, 180 S. W. 186, and that in the case at bar "the court limited the test of insanity to the capacity of the defendant to understand the nature and consequences of his acts." In other words, it is contended that if there be either incapacity to distinguish between right and wrong as to the particular act, or inability to refrain from doing the act, there is no responsibility.

We have examined the record in the case at bar with the greatest care, and have failed to find a scintilla of evidence that appellant was, at the time the crime charged in the information was committed, or ever had been afflicted with any disease either of the mind or body, so that there was no evidence in the case to which the test contended for by appellant could have been applied. There being no evidence of the alleged insanity of the appellant, the instructions complained of were gratuitous; but nevertheless, and as appears therefrom, were favorable to the appellant. And where the record shows, as in the case at bar, no evidence in the court below of the insanity of the defendant, this court will not entertain or consider that question. (*State v. St. Clair*, 6 Ida. 109, 53 Pac. 1.)

And, further, a defendant's defense of insanity in a criminal case is ineffectual until backed by evidence, and not until he has submitted substantial proof, sufficient to raise a reasonable doubt, is there any burden upon the state in that regard. (*State v. Wetter*, 11 Ida. 433, 83 Pac. 341; *State v. Tharp*, 48 Ida. 636, 284 Pac. 201.)

And, while the record contains ample proof of stupidity and moral depravity, there is absolutely no evidence, as above stated, that appellant ever suffered with any disease of the mind, nor with any form of insanity.

It is next contended that the trial court erred in refusing to instruct the jury that the burden was upon the respondent to prove that appellant was capable of forming a criminal intent. In *State v. Gruber*, 19 Ida. 692, 115 Pac. 1, this court held that it is not error for the trial court to refuse to give an instruction as to the law of insanity where, as here, there is no evidence tending to show insanity at the time of the commission of an offense. (See, also, *State v. Farnsworth*, 51 Ida. 768, 10 Pac. (2d) 295.)

Finally, it is contended that the court erred in giving said instruction No. 16, in that it is argued that such instruction assumed that appellant was guilty. That part of the instruction to which appellant objects, reads: "If at the time of committing the act charged . . . . " In

addition to the above-quoted instruction, the court instructed the jury that "all presumptions of law, independent of evidence, are in favor of innocence, and a man is presumed to be innocent until he is proved to be guilty beyond a reasonable doubt," and the court very fully and correctly instructed the jury as to the law of reasonable doubt, and specifically instructed the jury that: "To warrant you in convicting the defendant, the evidence must, to your minds, exclude every reasonable hypothesis other than that of the guilt of the defendant. That is to say, if after an entire consideration and comparison of all the testimony in the case, you can reasonably explain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you should acquit him." And by instruction No. 25, above quoted, the jury was instructed "not to single out any one instruction and draw from it an unreasonable conclusion, but you should consider it in connection with all the other instructions . . . . "

The instructions of the trial court, taken and considered as a whole, clearly and expressly left all questions of fact to be found by the jury. (See *State v. Willis*, 24 Ida. 252, 132 Pac. 962.) Consequently, the jury could not have understood that the trial court assumed, by the use of the language objected to, that appellant was guilty. However, instruction No. 16 is not recommended as a model to be followed in the future.

The judgment is affirmed.

Budge, Morgan and Ailshie, JJ., concur.

Givens, C. J., sat at the hearing, but took no part in the decision.