364 P.2d 159

STATE of Idaho, Plaintiff-Respondent,

v.

Robert CLOKEY, Defendant-Appellant.

No. 8912.

Supreme Court of Idaho.

June 22, 1961.

Rehearing Denied Sept. 5, 1961.

Charles S. Stout, Charles F. Reddoch, Boise, for appellant.

Frank L. Benson, Atty. Gen., Dwight F. Bickel, William E. Swope, Warren Felton, Asst. Attys. Gen., Wm. C. Roden, former Pros. Atty., Ada County, Boise, for respondent.

KNUDSON, Justice.

On October 30, 1959, appellant went to the home of his divorced wife, Betty Clokey, at three different times, the first time being about 3:00 o'clock P.M. Appellant stated that his reason for going to said home at that time was to check with his son regarding a hit and run charge which had been filed against appellant. Upon arriving at Mrs. Clokey's home he found her preparing to move to California, and observed that she was being assisted by her aunt, Florence Schleuse, and husband, Carl Schleuse. Appellant remained at said home approximately 15 minutes. He then went to the Sailor's Bar and from there to a business house known as Bill's Bargains on Vista Avenue in Boise where he inquired about renting a .22 caliber pistol. He was unable to rent such a gun at said place of business, however the proprietor telephoned another place also known as Bill's Bargains situate on Orchard Avenue and appellant was informed that the Orchard Avenue place of business had the caliber gun he wanted. Appellant later rented a .38 caliber pistol and purchased ten cartridges from Bill's Bargains on Orchard Avenue. Appellant put the gun in the glove compartment of his car and the cartridges in his pocket. He returned to Mrs. Clokey's home at about 5:00 P.M. for the purpose of saying goodbye to his daughter, Ketrice, and Mrs. Clokey. Mr. and Mrs. Schleuse were not present on that occasion. Appellant left Mrs. Clokey's home about 5:30 P.M. and again returned between 6:45 and 7:00 P.M. The purpose of his return, according to appellant, was to get someone to give his stalled car a push to get it started.

Appellant acknowledges that he removed the gun from the glove compartment of his car and put it in his pocket before he started his return to Mrs. Clokey's home. Appellant also acknowledges that upon his return he shot at Carl Schleuse shortly after

meeting him at the Clokey premises and denies that he remembers any events from that time until he awakened in the hospital. About 7:00 P.M. on that date at the Clokey residence a neighbor heard five gunshots. Shortly thereafter officers arrived at said residence and found the bodies of Betty Clokey, Florence Schleuse and appellant on the ground near a large tree in the Clokey yard. Betty Clokey was dead and Florence Schleuse was mortally wounded as a result of gunshot wounds. Carl Schleuse and appellant were both seriously injured by gunshot wounds. Appellant was lying on the ground unconscious with a .38 caliber pistol in his left hand.

Appellant was charged with first degree murder for the killing of Florence Schleuse. After trial in the district court the jury returned a verdict of guilty and recommended the death penalty. Accordingly a judgment of conviction was regularly entered wherein it was ordered that appellant suffer death in the manner provided by law as punishment for said crime. This appeal is from said judgment.

Six of the seven assignments of error relate to instructions which were given the jury.

Appellant contends that instruction No. 16 is erroneous, contrary to and against the law in that it (1) sweeps out the appellant's defense of insanity or his mental capacity to co-ordinate upon motive, intent and premeditation, and is (2) inconsistent with instructions Nos. 29 and 32 and renders certain other instructions void. Such instruction No. 16 provides as follows:

"The law of this State provides that every person guilty of murder of the first degree shall suffer death or confinement in the state prison for life, and the jury may decide which punishment shall be inflicted. If you should find the defendant guilty of murder of the first degree, you may determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life. In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment.

"In this regard you will recall that evidence was adduced in this case regarding the background and history of this defendant and his experiences and behavior in matters not related to the alleged crime for which he is now on trial; such evidence was not admitted for the purpose of establishing or tending to establish the guilt or innocence of this defendant of any crime charged in the information and may not be considered by you for such purpose, but is relevant and may be considered by you only as it may assist you in arriving at the punishment to be inflicted upon the defendant should you find him guilty of murder in the first degree."

The first paragraph of said instruction informs the jury that in the event they find the defendant guilty of murder of the first degree they may then determine whether the penalty to be imposed shall be death or confinement in the state penitentiary for life. Such instruction is in conformity with I.C. § 18–4004. Said instruction then calls attention to the evidence which was adduced during the trial regarding the *background and history* of the defendant *and his experiences and behavior in matters not related* to the alleged crime for which he was being tried.

In this connection evidence was introduced by and on behalf of appellant showing appellant's place and date of birth; that his father died when he was between five and seven years of age; that his mother remarried and he was raised with six half-brothers and sisters; that he quit school when he was seven years old; that he was mistreated when a boy at home; that in 1929 he was found guilty of first degree robbery and as punishment therefor served three years and seven months in San Quentin prison; during the years that followed he worked at four or five different trades or occupations; that he suffered a serious accidental injury while working in the mines; that he had been convicted of reckless driving and drunken driving during the past two years and that he had a hit and run charge pending at the time of this trial; that his son became involved in trouble and was committed in the Industrial Training School at St. Anthony, Idaho; that after the son returned to the home appellant and his son got into a fight, shortly after which his wife, Betty Clokey, obtained a divorce.

Such evidence is unrelated to the crime here charged and it is such evidence of biographical facts that the court refers to in said instruction No. 16. It is evidence regarding the *background* and *history,* the *experiences* and *behavior* of appellant which the jury may consider only as it may assist them in arriving at the punishment in the event the jury finds defendant guilty of murder of the first degree.

One of the reasons for permitting the introduction of evidence of biographical facts where such facts are unrelated to the offense charged is that the law recognizes that previous good or bad conduct should be considered in fixing punishment for crime. Our statute provides the court with discretionary power to consider circumstances in aggravation or mitigation of punishment as follows:

"After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same sum-

marily, at a specified time, and upon such notice to the adverse party as it may direct." I.C. § 19–2515.

I.C. § 19–2516 requires that the hearing be had in open court.

■ This Court has considered the language used in I.C. § 19–2515 and has stated that:

"It may be open to debate as to whether the 'circumstances' mentioned in § 19–2515, I.C., refer particularly to circumstances surrounding the commission of the crime and tending to aggravate or mitigate the character of the conduct involved, or whether such circumstances include also the convict, himself, as an individual, which would include his background, his age, upbringing and environment or any other matter appropriate to a determination of the degree of culpability. We think that the statute should be given the broader interpretation, particularly in a capital case. James v. State, 53 Ariz. 42, 84 P.2d 1081." State v. Owen, 73 Idaho 394, 253 P.2d 203, 207.

This Court has also determined that in cases where the jury may fix the punishment it should have opportunity, under proper instructions, to consider circumstances in aggravation or mitigation of the punishment. In State v. Owens, supra, this Court said:

"It, therefore, appears that the law contemplates that in fixing the penalty,

the court, when requested by either party, may and should hear and consider circumstances in aggravation or mitigation of the punishment. It logically follows that if it is proper for the court to hear and consider such evidence, the jury where it is called upon to fix the punishment, should have the opportunity to consider such proof, subject, of course, to a proper instruction limiting the jury's consideration of such evidence to the determination of punishment, and cautioning that it is not to be considered in determining guilt or innocence, or be allowed to influence the determination of that question."

■ We do not hold that evidence relating to biographical facts should be considered solely in connection with determining the punishment to be imposed in every case. However, we do conclude that under the facts in the instant case the instruction complained of was in no respect prejudicial to appellant for the reason that the biographical facts involved are irrelevant in relation to the insanity herein urged. We therefore conclude that the giving of instruction No. 16 was not error.

Under assignment of error No. 2 appellant contends that it was error to give instruction No. 29 for the reasons:

(1) that there was no evidence in the record to justify such instruction;

(2) that it was a comment upon the evidence by the court; and

(3) that it was inconsistent with instructions Nos. 16 and 32.

Instruction No. 29 provides:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.

"The rule of law is that when a person in a state of intoxication, voluntarily produced by himself, commits a crime, he shall not be permitted to use his own vice as a shelter against the normal legal consequences of his conduct.

"Hence voluntary intoxication, although evidence of such may throw light on an occurrence and aid in determining what took place, is not of itself either an excuse for the commission of crime or a defense to a charge of crime. But if and when the proof shows that the defendant unlawfully killed a human being, and if the evidence also shows that at the time of the mortal assault the defendant was intoxicated, or, in common language, that he was drunk, the jury is permitted and ought to consider such evidence of drunkenness, but for only one purpose, namely, in determining the degree of the crime. The weight to be given that evidence is a matter for the jury to decide in connection with its consideration of all other evidence pertinent to the question of degree of the offense."

The first paragraph of said instruction is the identical language used in I.C. § 18–116.

Appellant contends that the instruction was prejudicial to him because it "limits the question of intoxication to temporary drunkenness, when there was no evidence of such being the fact". Said statement is not supported by the record. Appellant called as a witness in his behalf, an employee at the Sailor's Bar, who testified that appellant came to the Sailor's Bar at about 10:00 A.M. on October 30, 1959; that he was intoxicated upon his arrival; that he remained there about three-quarters of an hour, during which time he drank four or five glasses of beer. Appellant testified that he was in the Sailor's Bar during the afternoon of that day; that he drank one or two beers at his apartment and the odor thereof on his breath was noticeable to both Mrs. Schleuse and Mrs. Clokey during the afternoon of said day. Whether appellant was

intoxicated at the time of committing the offense was a question for the jury.

There is no language in the instruction which constitutes a comment by the court upon the evidence. The instruction simply points out the distinction which the law makes, as far as responsibility is concerned, when the offense is committed at a time when the defendant is intoxicated as a result of voluntary use of intoxicating liquors.

■ Defendant denied guilt of the offense charged by reason of insanity and introduced evidence calculated to show that such state of mind was brought about, at least partially, by excessive drinking of intoxicants over an extended period of time. The court properly instructed the jury that "settled insanity produced by long continued intoxication has the same effect as to legal responsibility for one's conduct as insanity produced by any other cause." (Inst. No. 28.)

■ Since the evidence introduced by appellant tended to show that he had used intoxicating liquor over a considerable period of time and also used it to some extent within a short time before the offense was committed, the instruction was proper to point out a distinction between a state of ordinary drunkenness and alcoholic insanity. People v. Griffith, 146 Cal. 339, 80 P. 68; People v. Gaytan, 38 Cal.App.2d 83, 100 P.2d 496; People v. Sanchez, Cal.App., 205 P.2d 393; CALJIC, Rev. Edition, 319.

Since there is no inconsistency between said instruction No. 29 and any other instruction given, we conclude that the instruction complained of was, under the facts of the case, properly given.

■ Appellant claims error in giving instruction No. 28, which defines settled insanity as follows:

"Settled insanity produced by long continued intoxication has the same effect as to legal responsibility for one's conduct as insanity produced by any other cause, but the condition must be insanity as defined in these instructions and not merely a temporary mental condition produced by recent voluntary use of intoxicating liquor."

Appellant contends that said instruction is "contrary to, and against the evidence and constitutes a comment upon the evidence by the court, in that the evidence shows no recent voluntary intoxication, but long continued use of intoxicants, and his drinking on the date of the killing was and had been a daily pattern for a long time". There is no merit to such contention. The statement "that the evidence shows no recent voluntary intoxication" is not sustained by the record. We have heretofore in this opinion referred to evidence introduced by appellant that he was in a state of intoxication during the day the offense was committed. In this respect we quote

from appellant's brief in which instruction No. 29 is discussed.

"The evidence does show that the defendant had a serious drinking problem for several years—that he had been convicted of reckless and drunken driving—lost his driver's license—that he had been drinking heavily for at least a week. His drinking on the day of the killing was no different from what it had been for several days."

Since it was appellant's defense that he was not accountable for his acts by reason of insanity produced by long continuous use of intoxicants, it is difficult to see how such instruction could in any respect prejudice appellant's case. The court's instructions properly define insanity as a defense to crime and explain that temporary insanity is as fully recognized by law as is insanity of long duration. There was no error in giving the instruction complained of.

Appellant contends that the court erred in giving instruction No. 32, which provides as follows:

"You are reminded, however, that a person might be legally sane, as we define that term in dealing with the question of criminal responsibility, and yet be in an abnormal mental or nervous condition; and because of such condition he might be less likely or unable to have or to hold a specific intent or a certain state of mind, which is an essential ingredient of a certain crime. We have received evidence bearing on the mental and nervous condition of the defendant at the time of the alleged commission of the crime charged. Such evidence may be considered by you in determining whether or not the defendant did the act charged against him and, if so, whether or not, at that time, there existed in him the specific mental factor which, as you have been instructed, must accompany that act to constitute a certain crime or degree of crime."

Appellant contends that the instruction "is in fact a comment upon the evidence, limits its application to the question of intent, when the same is applicable to mental capacity, motive, malice and premeditation, as well as intent". We cannot agree with such contention. The record discloses that considerable evidence was received bearing on the mental and nervous condition of appellant at various times prior to the homicide involved. One of appellant's witnesses testified that on the Sunday preceding October 30, 1959, while visiting at her home "he [appellant] was sitting and talking and told me he needed help very badly". Appellant's landlady testified that she saw appellant during the morning of Thursday, October 29th, and in response to a question

as to what took place at that time said witness stated:

> "A. Well, I hadn't seen him for several days, and he was supposed to finish a job that he had started for me, and I went up to his apartment and he came to the door with his bath robe on, and he was very upset, told me he needed help, and I asked him what was the trouble and he didn't tell me, he just broke down and cried. I asked him when he had eaten last—he looked so bad—and he said he didn't know, and I told him I would fix him breakfast. I hadn't seen him for over a week, so I went down and fixed his breakfast and he came down and ate a few bites, drank some coffee and left, and told me he would be back and finish the job that afternoon. I never saw him after that."

Appellant's daughter testified that she had a conversation with appellant approximately one hour before the tragedy took place and in describing appellant's demeanor at that time stated: "he was pretty upset and said he didn't want us to leave, but didn't know what he could do". When asked how appellant acted said witness replied: "Well, he was crying, and he was upset because we were leaving".

■ Said instruction in substance informs the jury that they may consider evidence tending to show an abnormal mental or nervous condition in determining whether or not appellant at the time of the alleged offense had the specific intent which is an essential ingredient of the crime charged. We are of the view it properly stated the law.

■ Under appellant's fifth assignment of error it is contended that the court erred in failing to instruct the jury that the definition of involuntary manslaughter is also pertinent and applicable to the facts in this case. Our attention is not directed to, nor do we know of, any evidence in this case that would justify a finding that the death here involved was produced by appellant, without malice, in the operation of any firearm or deadly weapon, in a reckless, careless or negligent manner. This Court has repeatedly held that it is not error to refuse to instruct the jury that a defendant may be found guilty of a lesser offense when there is no evidence that would reduce the crime to such lesser offense. State v. Owen, supra; State v. Scott, 72 Idaho 202, 239 P.2d 258; State v. Elsen, 68 Idaho 50, 187 P.2d 976; State v. Brooks, 49 Idaho 404, 288 P. 894; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Thomas, 47 Idaho 760, 278 P. 773.

■ The court did instruct that murder of the second degree and manslaughter are offenses included within the charge of the information and that the jury could, if in their judgment the evidence supports such

verdict, find appellant guilty of any included offense. The court also instructed that "if you find that defendant was guilty of an offense included within the charge of the information, but entertain a reasonable doubt as to the degree of the crime of which he is guilty, it is your duty to convict him only of the lesser offense". This Court has on several occasions considered omissions such as here complained of by appellant, and has held that where one or more included offenses of an intermediate grade between the crime of which the defendant is convicted and the lesser offense which the court omitted or refused to submit to the jury, the omission or refusal is not error because the verdict indicates that the result would not have been different had the omitted requested instruction been given. State v. Owen, supra; State v. Alvord, 47 Idaho 162, 272 P. 1010; State v. Scott, supra; State v. Brooks, supra.

■ Additionally, no request was made for an instruction defining involuntary manslaughter and stating that it is an included offense, and where no request is made, no error can be predicated upon the failure so to instruct. State v. Anderson, 82 Idaho 293, 352 P.2d 972; State v. Scott, supra; State v. Dunn, 44 Idaho 636, 258 P. 553; State v. White, 7 Idaho 150, 61 P. 517; People v. Biles, 2 Idaho 114, 6 P. 120.

■ Appellant contends that the giving of instruction No. 20 was prejudicial to him and should not have been given. Said instruction is as follows:

"Where a person attempts to unlawfully kill a certain other person, but, by mistake or inadvertence, in such attempt kills a different person from the one whom he intended to kill, the law nevertheless holds the assailant responsible for his felonious intent, merely transferring its direction from the original object of the attempt to the person killed. The degree of guilt is the same as it would have been if the attempt had resulted in the death of the person at whom it was aimed."

Appellant argues that there is no evidence in the record to justify giving this instruction, however, the record discloses that within a very short period of time at least five shots were fired, and there was no eye-witness to the firing of four of such shots. Two people were killed and a third, besides appellant, was seriously wounded. Whether the killing of Florence Schleuse was the result of her obtruding herself between appellant and the object of his vengeance or was the result of a mistake in appellant's effort to kill someone else, it would, nevertheless, be murder of the first degree and it was proper to so advise the jury. The instruction being a correct statement of the law was properly given. People v. McAuliffe, 154 Cal.App.2d 332, 316 P.2d 381; People v. Steward, 156 Cal.App.2d 177, 318 P.2d 806; People v. Sutic, 41 Cal.2d 483,

261 P.2d 241; People v. Neal, 97 Cal.App. 2d 663, 218 P.2d 556; People v. Walker, 76 Cal.App.2d 10, 172 P.2d 380; People v. Buenaflore, 40 Cal.App.2d 713, 105 P.2d 621; People v. Aranda, 12 Cal.2d 307, 83 P.2d 928; 40 C.J.S. Homicide § 18 p. 864; 26 Am.Jur. 179, Homicide, § 35; Carpio v. State, 27 N.M. 265, 199 P. 1012, 18 A.L.R. 917.

There is no basis for a contention that the giving of such instruction was equivalent to a comment by the court as to his opinion.

■ Under appellant's final assignment of error it is contended that "there is no evidence in the record sufficient to show motive, intent, malice aforethought, or premeditation necessary to constitute first degree murder". With this contention we do not agree. Without attempting to discuss the evidence in detail we shall briefly give salience to a few parts of the evidence which we consider important in showing intent and premeditation.

The evidence is convincing that two gunshot wounds were the cause of the death of Florence Schleuse; that such wounds were caused by bullets fired from the .38 caliber pistol found in the hand of appellant as he lay upon the ground as a result of a self-inflicted wound immediately after the said Florence Schleuse had been mortally wounded, and that appellant fired the said two shots.

The evidence is likewise convincing as to appellant's intention and premeditation. Under the written statement signed by appellant four days after the tragedy (State's Exh. 17) appellant acknowledges that upon his first trip on that date to the home of Betty Clokey (his divorced wife) he learned that she was preparing to move to California and that Carl and Florence Schleuse were there helping Mrs. Clokey pack her household effects; that he resented what he felt was interference by Mr. and Mrs. Schleuse and stated:

"When it comes to outsiders butting in, that is the wrong thing. That is why there is two others included. I mean Mr. and Mrs. Schleuse if that is their name".

In said statement (Exh. 17) appellant states that following his first trip to Mrs. Clokey's house he went to a business house known as Bill's Bargains where he obtained the gun used by him; after obtaining said gun and ten cartridges he wrote a note, identified as State's Exh. 15, which was in his handwriting and was found in his jacket pocket after the shooting and is in words as follows:

"I am sorrey I had to do this child-[ren] I love you all and I love your

mother—I can't live with her. I know this is wrong but I've reach[ed] the end of my life. Good bye and God be with you      Bob."

Said Exh. 17 also contains a statement as follows: "When I knew what I did, I wanted to end it for myself".

Appellant was not denied the privilege of introducing any evidence he had tending to prove his defense of insanity. We have examined this record with great care and aside from testimony relating to a background of over-indulgence in the use of intoxicating liquor, we do not find any evidence of insanity. It is true that appellant's history does not disclose a way of living to be desired; however, it was the province of the jury to weigh the facts and determine if insanity played a part in the commission of the offense charged. A defendant's plea of insanity is ineffectual until backed by evidence; and, not until he has submitted substantial proof, is there any burden upon the state in that regard whatever. State v. Tharp, 48 Idaho 636, 284 P. 201; State v. Gould, 55 Idaho 588, 44 P.2d 1114; State v. Wetter, 11 Idaho 433, 83 P. 34. The instructions as given covered every defense available to appellant from the state of facts proved. Judgment affirmed.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.