447 P.2d 10

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Bernard W. JOHNSON, Defendant-Appellant.**

No. 10156.

Supreme Court of Idaho.

Nov. 13, 1968.

D. K. Worden, Jr., Lewiston, for defendant-appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., Lewiston, for plaintiff-respondent.

TAYLOR, Justice.

Defendant (appellant) was tried by a jury, found guilty, and convicted of the crime of burglary of the first degree.[1] The facts adduced upon trial show without substantial contradiction that defendant was apprehended by the police while inside the Owl Prescription Drive-In in the city of Lewiston, at about the hour of 3:30 a. m. on June 29, 1967. The business there operated was a retail drug store. The store had been closed for the night. A window on one side of the building had been forced open. At the time of the arrest a number of suitcases belonging to the owner of the business and a part of the merchandise there kept for sale, were found at various places on the floor of the premises, filled with items of merchandise from the shelves of the store. The owner-manager testified that these items were not in this condition when the store was closed the night before the burglary. Defendant was neither an owner nor an employee of the owner, nor did he have permission to enter the premises after the closing hour.

In his defense defendant contended that at the time of the occurrence of the alleged crime, he was under the influence of alcohol and of the drug "Pathibamate" to the extent that he was unable to form the intent necessary to the commission of the crime of burglary.

Dr. John Carssow, defendant's physician and part-time employer, testified that he prescribed pathibamate as medication for defendant's ulcer condition. He also testified that he was aware of defendant's propensity to overindulgence in alcohol. Objections were sustained to hypothetical questions put to the doctor in regard to the effect of the use of alcohol and pathibamate in combination. The objections were sustained on the ground that, at the time the questions were asked, no evidence had been introduced to indicate that defendant had taken pathibamate immediately prior to the alleged burglary. The doctor had not seen defendant subsequent to 3:00 o'clock p. m. on June 28th, at which time defendant was doing some painting on the doctor's house. In answer to further questions, the doctor testified to the effect that a person taking alcohol and pathibamate in combination might be subject to hallucinations.

---

1. "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, closed vehicle, closed trailer, airplane or railroad car, with intent to commit grand or petit larceny or any felony is guilty of burglary." I.C. § 18-1401.

"Every burglary committed in the night time is burglary of the first degree, and every burglary committed in the day time is burglary of the second degree." I.C. § 18-1402.

"The phrase 'night time' as used in this chapter means the period between sunset and sunrise." I.C. § 18-1404.

Dr. Otto G. Riml, staff physician at State Hospital North, testified that he had treated defendant for ulcers while defendant was a patient at the hospital in August, 1967. In answer to a question concerning defendant's drinking habits, Dr. Riml replied:

"I should say that all the evidence I do have is based on the history I received from him and according to that history he is supposed to be a chronic alcoholic."

Defendant testified that on June 28th, the day prior to his arrest, he had worked at Dr. Carssow's house from 6:00 a. m. until 10:30 p. m., with a three hour break in the afternoon.

Dr. Carssow's testimony was that defendant worked at his house from 8:00 a. m. until 6:00 p. m. As to the period between 3:00 p. m. and 6:00 p. m., the doctor's testimony was that his wife told him defendant had painted until 6:00 p. m. No objection was made to the hearsay.

Defendant further testified that he had consumed a pint of whisky and ten or twelve pathibamate pills while on the job; thereafter he went to "Eddies Tavern" in Lewiston where he drank until 12:55 a. m.; later he and an unnamed acquaintance drove to a bar in Clarkston where he drank four or five highballs. Around 1:30 a. m. defendant and his friend drove to another bar where he drank some whisky and met a woman, also unnamed; from that time until he found himself in the police station in Lewiston he could not remember anything. Testimony as to his drinking and intake of the drug prior to the burglary was not corroborated by other witnesses. However, the arresting officers testified that defendant seemed intoxicated, though coherent. Defendant also testified to a long history of blackouts and excessive drinking.

Defendant has assigned as error the refusal of the court to permit Dr. Carssow to answer the hypothetical questions as to the effect of the consumption of alcohol and pathibamate in combination. The rulings were correct. At the time these questions were put, no evidence had been introduced to show that defendant had taken pathibamate either on June 28th or 29th, and the doctor was not recalled for the purpose of testifying, hypothetically, after the defendant had testified to his consumption of alcohol and the drug.

The order of trial and the presentation of evidence is usually an administrative decision and within the discretion of the trial court. While the court could have permitted the doctor to answer the hypothetical questions on the assumption or assurance that the foundation testimony would later be presented, the general rule is that the facts upon which an hypothetical question is based must be admitted by the adverse party, or be supported by evidence in the record at the time the question is propounded. Hence it is within the court's discretion to sustain objection to the hypothetical question until a foundation for it has been laid. Willis v. Western Hospital Association, 67 Idaho 435, 182 P.2d 950 (1947); see Evans v. Bannock County, 59 Idaho 442, 83 P.2d 427 (1938); see also People v. Jordan, 169 Cal.App.2d 727, 337 P.2d 912 (1959); Green v. State, 112 Ga. App. 329, 145 S.E.2d 80 (1965); People v. Muniz, 31 Ill.2d 130, 198 N.E.2d 855 (1964); State v. Tharp, 258 Iowa 224, 138 N.W.2d 78 (1965); Hoffman v. State, 162 Neb. 806, 77 N.W.2d 592 (1956); State v. Alexander, 78 Wyo. 324, 324 P.2d 831 (1958); Lujan v. State, Wyo., 423 P.2d 388 (1967).

Defendant also assigns as error the refusal of the court to allow him to testify as to his claimed lack of intent to commit the burglary charged. Under direct examination, defendant was asked, "Did you knowingly, wilfully and intentionally burglarize the Owl drug store?" The question was leading and the objection to it was properly sustained. I.C. R9–1203.[2] Also,

2. "A question which suggests to the witness the answer which the examining party desires is denominated a leading or suggestive question. On direct examination leading questions are not allowed, except in the sound discretion of the court,

the question in the form put called for a conclusion of the witness on the issue on trial and defendant's answer would add nothing to the record not already presented by his plea of not guilty.

When the intent accompanying an act of the accused is in issue in a criminal prosecution, the defendant is permitted to testify to the intent with which the act was done and to explain fully his conduct and purpose in relation thereto. State v. Hopple, 83 Idaho 55, 357 P.2d 656 (1960). The question being considered here did not seek to elicit an expression from defendant of the intent with which he did any act, or an expression of the purpose or explanation of any act done by him. He testified that he remembered nothing that transpired for several hours before, during, and after his apprehension in the drug store. Competency to testify to a particular occurrence depends upon the ability of the witness to perceive, recollect, and communicate with reference to the occurrences. People v. James, 218 Cal.App.2d 166, 32 Cal.Rptr. 283 (1963); People v. Nash, 36 Ill.2d 275, 222 N.E.2d 473 (1966); People v. Cox, 87 Ill.App.2d 243, 230 N.E.2d 900 (1967); cf. IRCP Rule 43(a); I.C. § 9–201; I.C. § 19–3001. Thus, the defendant by his own testimony has declared himself incompetent to answer the question.

Defendant assigns as error the refusal of the trial court to give to the jurors his requested instruction on insanity. We recognize insanity as an excuse for the crime charged may be raised on a plea of not guilty. I.C. § 19–1716. Nevertheless all persons are presumed sane. State v. Iverson, 77 Idaho 103, 289 P.2d 603 (1955); State v. Wetter, 11 Idaho 433, 83 P. 341 (1905); People v. Walter, 1 Idaho 386 (1871); see State v. Clokey, 83 Idaho 322, 364 P.2d 159 (1961); State v. Gould, 55 Idaho 588, 44 P.2d 1114 (1935); State v. Tharp, 48 Idaho 636, 284 P. 201 (1930).

No evidence was presented at the trial tending to support a defense of insanity. Where there is no evidence of insanity the trial court has no duty to give instruction thereon. State v. Gould, supra; State v. Gruber, 19 Idaho 692, 115 P. 1 (1911).

Defendant also contends that:

"The court erred in failing to take into consideration the fact that the defendant was a confirmed alcoholic and in failing to instruct the jury that, if the defendant's use of intoxicants was the product of an alcoholic's impulsive and overwhelming craving for alcohol, same would not constitute voluntary intoxication."

We shall not at this time go into legal merits of appellant's claim that intoxication of an alcoholic is not voluntary.[3] It is sufficient for the present purpose to observe

---

under special circumtances, making it appear that the interests of justice require it."

3. In view of the present inability of the medical profession to differentiate, scientifically, between true addictive drinking and other forms of chronic, pathological, but non-addictive drinking, e. g. "Plateau" drinking, and also in view of the important questions raised but not resolved in the recent case of Powell v. State of Texas, we are not prepared to state as a matter of law that the intoxication of an "alcoholic" is involuntary. See Powell v. State of Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254; Jellinek, The Disease Concept of Alcoholism (1960); Murtagh, Arrests for Public Intoxication, XXXV Fordham L.Rev. 1 (1966).

Furthermore, assuming defendant has a serious drinking problem, there is no evidence that defendant loses control over his drinking habits once he takes the first sip, nor that he is unable to abstain from taking the first sip. "Presumably a person would have to display both characteristics in order to make out a constitutional defense, should one be recognized." Powell v. State of Texas, supra. Under such circumstances, we decline the opportunity to take the "great leap forward."

State v. Oyler, 92 Idaho 43, 436 P.2d 709 (1968), cited by appellant is limited to the question of imposing upon probationer a condition (absention from alcohol) allegedly impossible of fulfillment, and hence is not relevant to the present case.

that no such instruction was requested. The proposition urged by defendant is not one of the "general principles of law" or "stock instruction" applicable in criminal cases, such as this, which the court is required to give to the jury in its instructions, whether requested or not. See State v. Freeman, 85 Idaho 339, 379 P.2d 632 (1963); State v. Patterson, 60 Idaho 67, 88 P.2d 493 (1939). The failure of the trial court to instruct the jury on the point urged was not error.

■ Defendant also urges that:

"The court erred in forbidding to allow defense counsel to examine notes in the possession of a testifying prosecution witness where the witness had been using these notes to refresh his recollection during testimony, and where a request was made to examine the same by defense counsel."

The ruling was made during cross-examination of state's witness Drevlow, one of the arresting officers. The officer testified he had made notes of occurrences at the time of, and shortly after, the arrest of defendant. Defense counsel observed that the officer referred to the notes during the course of his testimnoy, and requested the opportunity to examine the notes for such purpose as they might serve in his cross-examination of the witness. This ruling of the court was patently erroneous.

"A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So also a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution." I.C. R9–1204.

A similar ruling under another statute (I.C. R9–1212) was held prejudicial in State v. McMahan, 57 Idaho 240, 65 P.2d 156 (1937). However, in the present case the verdict of guilty is ovewhelmingly supported by the evidence, and the relevant material facts testified to by the witness Drevlow were corroborated substantially by other competent witnesses. In view of this situation we think the error was technical and in this case harmless, hence, not reversible. Inouye v. McCall, 35 Cal.App.2d 634, 96 P.2d 386 (1939); see State v. Darrah, 92 Idaho 25, 435 P.2d 914 (1968); State v. Anstine, 91 Idaho 169, 418 P.2d 210 (1966); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965); State v. Gilbert, 65 Idaho 210, 142 P.2d 584 (1943); I.C. §§ 19–2819, 19–3702; see also State v. Grimes, 154 Conn. 314, 228 A.2d 141 (1966) (dictum).

Judgment affirmed.

SMITH, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.