MARTIN v. STATE.

Opinion delivered October 2, 1911.

1. BIGAMY—INSANITY CAUSED BY DRINK.—In a prosecution for bigamy, it is a good defense that the defendant at the time of the alleged bigamous marriage was temporarily insane from drinking liquor. (Page 193.)

2. SAME—INSANITY—EVIDENCE.—Where the defense to a charge of bigamy was that the marriage took place while defendant was temporarily insane as a result of a drunken debauch, the evidence of witnesses who were not present on the occasion of the alleged bigamous marriage, but who were intimately acquainted with defendant, to the effect that the drinking of liquor by him produced a diseased condition of the mind, to such an extent that he did not know right from wrong, was competent. (Page 194.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; reversed.

STATEMENT BY THE COURT.

W. D. Martin was indicted, tried before a jury and convicted of the crime of bigamy. Sophia Lottå, the principal witness for the State, testified substantially as follows:

"I first met the defendant about four years ago, when he came to our house to sell spectacles, and have seen him several times since. On the 11th day of August, 1911, I saw the defendant at Westville, Oklahoma, and he wanted me to go on a trip with him. I refused to go unless he married me, and he

said we would go to Fayetteville, Arkansas, and be married. We arrived there about 4 o'clock P. M. of the same day, and were married a few hours later. We immediately went to Fort Smith on the train and stayed there until the next Saturday. Then the defendant told me that he had a wife living at Bentonville, Arkansas. I thought I had better go home, and that night took the train for home. The defendant said that he would come up to see me the next Tuesday. After I reached home, I telephoned over to Bentonville, and was informed that the defendant had a wife there. He did not come to see me."

On cross examination she stated that when she first met defendant on the day she married him that he was talking with every breath, and that she thought he had been drinking.

The county clerk of Washington County identified the marriage license issued by him to the defendant and Sophia Lotta, and stated that he thought the defendant had been drinking when he issued the license.

The county judge, who married them, testified that the defendant appeared to be drunk or like a man who had been drinking; that he seemed to be very nervous and excited; that he seemed to be under the influence of liquor or something.

The defendant states that he arrived at Westville, Oklahoma, after midnight on August 9, 1910. That upon his arrival he drank two or three drinks of whisky, and then went to a friend's house to play cards. That while there he was given some apricot brandy, and took a big drink of it. That it was not long until he began to feel sick and "sort o' queer." That this was early Wednesday morning, and that he does not remember anything more until he came to himself the following Saturday morning at a hotel in Fort Smith, Arkansas. That there was a woman with him, and he asked her what she was doing there, and that she replied that she had come with him from Fayetteville, Arkansas, where they had been married. That he at once went back to Bentonville, Arkansas, where he lived, and brought suit to annul the marriage. That he does not remember the marriage, nor anything that happened from early Wednesday morning until the following Saturday. Defendant also testified that after each debauch from the excessive use of whisky his mind is an absolute blank from one or two days to a week after the effect of the whisky has left him. That

during such periods he borrows money, purchases land, buys horses, stock and buggies, and does not know where he got the property or remember any part of the transaction. That he does not mean to say that he does these things while drunk; but they are done after the effect of the whisky has left him. That whisky makes him drunk like any one else; but that after the immediate effect of the whisky has left him his mind is blank for a period of time from one or two days to a week, and that during this time he does not remember anything he does.

. The defendant's brother also testified that he had observed defendant many times after he had been indulging in the excessive use of alcoholic liquors. That after he has been drunk for a day or two the defendant always loses control of his mind, and does not remember anything or anybody. That defendant's mind remains in this condition always from a day to a week after the debauch, and after the effect of the liquor had left him. He detailed the acts and conduct of defendant during such periods, and said that defendant was at such times insane. He also stated that their father died in an insane asylum, and had been insane for several years prior to his death.

R. H. Burkhead testified: Was at Westville in August, 1910, and saw defendant there. Saw defendant there during August 10 and the morning of 11th. He was in and out of the hotel. Was talking to everybody. Was nervous and excited. He seemed to be drinking or more like a crazy man.

CROSS EXAMINATION.

Defendant didn't stagger. He could walk as good as anybody. He acted queer, and talked to people in a foolish sort of way, and imagined that he owned so much property. He claimed that he had bought a number of business houses in Westville and some oil wells. He talked plain, but the substance of his talk was not like a sane man. He would jump from one subject to another, and didn't seem to know what he was doing or saying.

RE-DIRECT EXAMINATION.

This was his condition when he left Westville on the train that day.

James Lowe testified to substantially the same state of facts.

In rebuttal, the State introduced several witnesses, who testified that, while defendant appeared to have been drinking when he married the prosecuting witness on the evening of the 11th day of August, 1911, he knew what he was doing, and that he knew right from wrong.

Other evidence will be stated or referred to in the opinion.

*Rice & Dickson*, for appellant.

1. The court erroneously excluded testimony of witnesses who had known him long and intimately, offered by appellant, to the effect that for periods varying from a day or two to a week after he had otherwise recovered from a drunken debauch appellant's mind was in such a diseased and insane condition that he was irresponsible, and did not know right from wrong. The testimony was admissible though the witnesses were nonexpert. 54 Ark. 588; 76 Ark. 286; 64 Ark. 523. The history, conduct and appearance of the defendant before, at the time of and after the alleged offense was admissible. 7 Enc. of Ev. 449; 27 N. E. 362; 20 Ark. 216; 42 N. E. 1045; 3 Rice on Ev. 670; 39 Am. Rep. 213-217.

2. Under his plea of insanity, and under the evidence admitted, defendant was entitled to the instruction No. 1 requested by him, and the court erred in refusing it. 40 Ark. 511.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

1. The testimony offered by the appellant to show the condition of his mind succeeding former drunken debauches was properly refused. None of the witnesses by whom this condition of mind was sought to be proved knew anything about appellant's condition at the time of the alleged bigamous marriage.

2. There was no evidence on which instruction No. 1 could be predicated, and it was, therefore, properly refused. 76 Ark. 289; 34 Ark. 311; 40 Ark. 511.

HART, J., (after stating the facts). Counsel for the defendant urge that the court erred in refusing to give the following instruction requested by them:

"1. The court charges the jury that voluntary intoxication is no defense to this charge, but if you believe from a preponderance of the evidence that at the time of the alleged bigamous marriage the defendant was laboring under such a defect of reason from disease of the mind, regardless of the cause of such mental condition, as not to know the nature of the act he was doing, or, if he did know it, that he was ignorant that he was doing what was wrong, then you will find the defendant not guilty."

Under our statute no intent is involved in bigamy except to do the thing forbidden by the statute. It is conceded by counsel for the defendant that voluntary drunkenness is no excuse for the crime. They insist, however, that under their testimony the defendant did not have sufficient mental capacity at the time he married the prosecuting witness to distinguish between right and wrong in regard to the act of marriage, and that this defect of reason was a secondary and not a primary consequence of drinking alcoholic liquors. Hence they claim they were entitled to the instruction.

The law on the subject is clearly and tersely stated in case of *Reg.* v. *Davis,* 14 Cox, C. C. (Eng. Rep.) 563, as follows:

"Drunkenness is one thing and the disease to which drunkenness leads are different things; and if a man by drunkenness brings on a degree of madness, even for a time, which would have relieved him from responsibility if it had been caused in any other way, then he would not be criminally responsible. * * * The man is a madman, and is to be treated as such, although his madness is only temporary." Such is the effect of our own decisions. *Byrd* v. *State,* 76 Ark. 286; *Casat* v. *State,* 40 Ark. 511.

Of course, no degree of mere intoxication will excuse crime. There is, however, another effect of the excessive use of alcoholic liquors which will excuse crime; and that is mental unsoundness brought on by excessive drinking, which remains after the intoxication has subsided. If this latter condition exists to such extent that the mind of the defendant is incapable of distinguishing between right and wrong in regard to the particular act he is charged with doing, he is not liable to punishment. In this case, the testimony of the defendant, if it is to be believed, tended to show mental unsoundness

which was separable from mere intoxication. The court should, therefore, have left it to the jury to determine whether there was any mental unsoundness, which was separable from the intoxication, and, if there was, whether it was sufficient to overthrow defendant's sense of right and wrong at the time he married the prosecuting witness. The evidence adduced by him on this point may have been regarded by the trial court as very feeble, yet it was sufficient to justify the charge requested.

Counsel for defendant also contends that the court erred in excluding from the jury certain evidence offered by them to the effect that several witnesses present in court would testify, if permitted to do so, that they were long, well and intimately acquainted with defendant—many of them were officers who had had him in custody at such times—and that they would all testify that in each and every instance, and always from a day or two to a week after he had quit drinking and after the intoxicating effects of the liquor had left him, there was produced a diseased condition of the mind, to such an extent that he does not know right from wrong. That defendant, on such occasions, was not drunk but insane. Although the witnesses were not present, and did not have an opportunity to observe the condition of the defendant on the day he married the prosecuting witness, yet the evidence, when considered in connection with the other evidence adduced by the defendant, was intended to show that excessive drinking in the case of the defendant always had the effect to produce a condition of insanity after the immediate effects of his intoxication had left him; and was admissible for what the jury might consider it worth for that purpose.

Other assignments of error are pressed upon us as grounds for a reversal of the judgment, but, in view of another trial, we do not deem it necessary to discuss them.

For the errors in refusing to give instruction No. 1 asked by the defendant and in excluding the evidence indicated in the opinion, the judgment will be reversed, and the cause remanded for a new trial.