[No. 8536.]

### RYAN V. THE PEOPLE.

1. CRIMINAL LAW—*Insanity as a Defense.* One whose mind is so diseased that he is incapable to distinguish the right from the wrong of his act, or being able to so distinguish, is, by reason of the mental impairment, incapable of choosing the right and refraining from the wrong, is not accountable, and this, whether such mental impairment is manifested by insane delusions of whatever nature, by irresistible impulse, or otherwise. (433.)

The doctrine of *McNaughton's* case, 10 Cl. & F. 200, as to what delusions will suffice to establish the defense of insanity, repudiated. (429-433.)

2. —— *Evidence—Admissibility.* Indictment for murder. Defense insanity. Testimony as to remarks made by deceased, and telephonic communications between deceased and others, as to the conduct of the prisoner, previous to the homicide, *held* inadmissible. (434.)

The defense being insane delusions indulged by the prisoner that deceased had betrayed him when acting as his attorney, and in other respects had done him serious wrong, *held* that testimony as to the relations between the prisoner and deceased, by those having personal knowledge of the matter, were admissible—more properly in chief than in rebuttal. (434.)

3. ERROR—*Misconduct of Prosecutor.* Where, in the trial of an indictment for murder, the defense being insanity, a statement by the special prosecutor, in the closing argument to the jury, that the defense of insanity is "a disgrace to American jurisprudence," is highly improper and reprehensible. (434, 435.)

4. —— *Bill of Exceptions.* Improper statements made to the jury in the closing argument, not set forth in the bill of exceptions, but merely by affidavit, will not be considered. (434.)

*Error to Larimer District Court.* Hon. NEIL F. GRAHAM, Judge.

Mr. L. R. Rhodes, for plaintiff in error.

Hon. Fred Farrar, Attorney General, Mr. Norton Montgomery, Assistant Attorney General, for the People.

Mr. Justice Bailey delivered the opinion of the court.

The defendant, William L. Ryan, was convicted in the District Court of Larimer County, of murder in the first degree, with penalty fixed at death. The victim, Newton Crose, was an attorney, with offices in the Avery Building in Fort Collins, where the tragedy occurred on the 14th day of August, 1914, and as such had for several years acted for the mother of the defendant, and also for the defendant himself. The defense was insanity.

That part of Instruction No. 16, to the giving of which objection was made and exception reserved, reads as follows:

"An insane delusion which will alone suffice to establish the defense of insanity must be of such a character that, if things were as the person possessed of such delusion imagined them to be, it would justify the act springing from such delusion."

No objections are urged to the other instructions. They therefore need be neither considered nor discussed, and we express no opinion upon their sufficiency and correctness.

The rule embodied in the matter complained of was formulated in England in 1843, upon questions propounded to the Judges by the House of Lords, in consequence of the acquittal of one McNaghten of murder, on the ground of insanity, and has since been approved in some jurisdictions in this country, and disapproved in others.

Delusion is defined as "a false conception and persistent belief, unconquerable by reason, of what has no existence in fact." Webster's New International Dictionary,—Delusion, 3. All delusions which show or tend to show insanity are insane delusions. Insanity is a disease of the mind, and

delusion a symptom of the disease. It would be as incorrect in law to say that all delusions are insanity as that all insanity is delusion.

The mind may be so impaired by disease as to lose all appreciation of duty to society in one or many particulars, or realizing the duty, be incapable of performing it. Where the evidence of delusion shows that a person is so insane at the time of the commission of the act as to be incapable of entertaining criminal intent, it is in point of law insanity as to all acts resulting from such delusion, and in such circumstances the act is no more a crime than a like act would be in a person totally mad. In the trial of the present case the theory of the defense was that the deceased was killed by the defendant acting under delusions showing an insane condition of the mind compelling the act, and all the testimony introduced for the purpose of making out his defense was directed to the support of that contention.

The substance of the testimony adduced to show that the defendant was at the time of the act laboring under insane delusion was that he believed the deceased, while acting as his attorney, had betrayed him, in a suit in which his wife procured a divorce and the custody of their two children; also in another suit brought by one Dr. Norton against him; and that the deceased had ruined him financially by forcing him to transfer his interest in a farm at a sacrifice, to pay debts, had induced the mother of defendant to withhold further assistance from him when in financial straits, and had denounced him to the world as a leper and drunkard.

The instruction could scarcely have failed to mislead the jury, as its practical effect was to nullify the testimony adduced as to the delusions, since such testimony did not relate to the kind of delusions which, if based on true or actual facts, as stated in the instruction, would have justified the killing, and therefore the giving of it, under the facts

of this case, because of the character of the testimony intro-
duced, being only the delusions, was clearly prejudicial. We
do not say that the giving of this instruction would neces-
sarily be prejudicial error in all cases where insanity is the
defense, but do say that in such cases it has no application,
states a wrong principle of law, and should not be given.

By this instruction the jury were told that in order to
acquit the defendant on the ground of insane delusion, they
must consider and determine whether the supposed state of
facts with respect to which the delusion existed would, if
real, have justified the commission of the act. This put the
inquiry upon a basis of the criminality of a like act in a sane
person, rather than upon the question of the sanity or insan-
ity of the accused. The defense of insanity raises the ques-
tion of mental accountability, and is purely a trial of the
condition of the mind, whether it is so diseased as to render
the accused incapable of crime, and has to do with the nature
or character of the particular delusions which are relied
upon to establish insanity. only as they may. under some cir-
cumstances, in their very nature throw light upon the mental
condition. To apply the same test for the determination of
the question of insanity as is applied to determine what is
criminal in a sane person, is obviously wrong. The effect of
the instruction is to declare a person who may be insane be-
cause of delusions accountable to the law for all acts which
would be criminal if he were sane. This manifestly cannot
be a correct rule. A simple illustration discloses its vice.
Suppose a man labors under a delusion that a countryman
is involved in a traitorous scheme in the capacity of a foreign
spy, such delusion so completely possessing his mind that
it becomes a foremost and constant thought, and actually
renders him insane, and under it he kills that other in the
belief that it was an act of civil duty. This instruction, if
given in such a case, would preclude an acquittal on the
ground of insanity, no matter how firmly satisfied of the

existence of that fact the jury might be, simply because the supposed facts of the delusion would not, if founded upon fact, justify the commission of the act. Thus punishment might be imposed upon the most unfortunate sufferer from mental disease, should his act chance to be the same or similar to acts that would be criminal in a sane person. The question involved is one of first impression in this jurisdiction, and notwithstanding the approval of the rule elsewhere, we deem it unsound.

In criminal trials, where proof of delusions has been offered in defense, some courts, in instructing the jury, have employed the term partial insanity, as interchangeable with insane delusion. and have undertaken to lay down rules of law governing accountability under such circumstances, differing from those applicable where the proof is of general insanity. In all such cases the controlling question is the sanity or insanity of the accused with respect to the act, and upon trial of this issue there is, in legal contemplation, no middle ground, the defendant is either sane or insane, and therefore culpable or inculpable, according as that question may be determined by the jury from the evidence.

In *Parsons v. State,* 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193, the court, discussing the propriety of an instruction like that under consideration, said:

"The rule in *McNaughten's* case as decided by the English judges, and supposed to have been adopted by the court, is that the defense of insane delusion can be allowed to prevail in a criminal case only when the imaginary state of facts would, if real, justify or excuse the act; or in the language of the English judges themselves, the defendant 'must be considered in the same situation as to responsibility, as if the facts with respect to which the delusion exists were real.' *Boswell's* case, 63 Ala. 307, (35 Am. Rep. 20). It is apparent from what we have said that this rule cannot be correct as applied to all cases of this nature, even limiting it as done

by the English judges to cases where one 'labors under partial delusion, and is not in other respects insane.' *McNaughten's* case, 10 Cl. & Fin. 200; 2 Lawson's Cr. Def. 150. It holds a partially insane person as responsible as if he were entirely sane, and it ignores the possibility of crime being committed under the duress of an insane delusion, operating upon the human mind, the integrity of which is impaired or destroyed by disease, except perhaps in cases where the imaginary state of facts, if real, would excuse or justify the act done under their influence. Fields Med. Leg. Guide, 101-104; Guy & F. Forsenic Med. 220. If the rule declared by the English judges be correct, it necessarily follows that the only possible instance of excusable homicide in cases of delusional insanity would be where the delusion, if real, would have been such as to create in the mind of a reasonable man, a just apprehension of imminent peril to life or limb. The personal fear or timid cowardice of the insane man, although created by disease acting through a prostrated nervous organization, would not excuse undue precipitation of action on his part. Nothing would justify assailing his supposed adversary except an overt act or demonstration on the part of the latter, such as, if the imaginary facts were real, would under like circumstances have justified a man perfectly sane in shooting or killing. If he dare fail to reason on the supposed facts embodied in the delusion, as perfectly as a sane man could do on a like state of realities, he receives no mercy at the hands of the law. It exacts of him the last pound of flesh. It would follow also under this rule, that the partially insane man, afflicted with delusions, would no more be excusable than a sane man would be, if perchance it was by his fault the difficulty was provoked, whether by word or deed; or if, in fine, he may have been so negligent as not to have declined combat when he could do so safely without increasing his peril of life or limb. If this has been the law heretofore, it is time it should be so no longer. It is

not only opposed to the known facts of modern medical
science, but it is a hard and unjust rule to be applied to the
unfortunate and providential victims of disease. It seems
to be a little less than inhuman, and its strict enforcement
would probably transfer a large percentage of the inmates
of our insane hospital from that institution to hard labor
in the mines or the penitentiary. Its fallacy consists in the
assumption that no other phase of delusion proceeding from
a diseased brain, can so destroy the volition of an insane
person as to render him powerless to do what he knows to be
right, or to avoid doing what he may know to be wrong.
This inquiry, as we have said, and here repeat, is a question
of fact for the determination of the jury in each particular
case. It is not a matter of law to be decided by the courts.
We think it sufficient if the insane delusion—by which we
mean the delusion proceeding from a diseased mind—sin-
cerely exists at the time of committing the alleged crime,
and the defendant, believing it to be real, is so influenced by
it as either to render him incapable of perceiving the true
nature and quality of the act done, by reason of the depri-
vation of the reasoning faculty, or so subverts his will as to
destroy his free agency by rendering him powerless to resist
by reason of the duress of disease."

And in *State v. Jones,* 50 N. H. 369, 9 Am. Rep. 242,
with reference to this rule, it is said:

"The doctrine thus promulgated as law has found its
way into the text-books, and has doubtless been largely re-
ceived as the enunciation of a sound legal principle since
that day. Yet it is probable that no ingenuous student of
the law ever read it for the first time without being shocked
by its exquisite inhumanity. It practically holds a man
confessed to be insane, accountable for the exercise of the
same reason, judgment, and controlling mental power, that
is required of a man in perfect mental health. It is in effect
saying to the jury, the prisoner was mad when he committed

the act, but he did not use sufficient reason in his madness. He killed a man because, under an insane delusion, he falsely believed the man had done him a great wrong which was giving rein to a motive of revenge, and the act is murder. If he had killed a man only because, under an insane delusion, he falsely believed the man would kill him if he did not do so, that would have been giving rein to an instinct of self-preservation, and would not be a crime. It is true, in words, the judges attempt to guard against a consequence so shocking, as that a man may be punished for an act which is purely the offspring and product of insanity, by introducing the qualifying phrase, 'and is not in other respects insane." That is, if insanity produces the false belief, which is the prime cause of the act, but goes no further, then the accused is to be judged according to the character of motives which are presumed to spring up out of that part of the mind which has not been reached or affected by the delusion or disease. This is very refined. It *may* *be* that mental disease sometimes takes a shape to meet the provisions of this ingenious formula; or, if no such case has ever yet existed, it is doubtless within the scope of omnipotent power hereafter to strike with disease some human mind in such peculiar manner that the conditions will be fulfilled; and when that is done, when it is certainly known that such a case has arisen, the rule may be applied without punishing a man for disease. That is, when we can certainly know that, although the false belief on which the prisoner acted was the product of mental disease, still, that the mind was in no other way impaired or affected, and that the *motive* to the act did certainly take its rise in some portion of the mind that was yet in perfect health, the rule may be applied without any apparent wrong, but it is a rule which can be safely applied in practice, that we are seeking; and to say that an act which grows wholly out of an insane belief that some great wrong has been inflicted, is at the same time

produced by a spirit of revenge springing from some portion or corner of the mind that has not been reached by the disease, is laying down a pathological and psychological fact which no human intelligence can ever know to be true, and which, if it were true, would not be *law*, but pure matter of fact. No such distinction ever can or will be drawn in practice; and the absurdity as well as inhumanity of the rule seems to me sufficiently apparent without further comment."

A person who is so diseased in mind at the time of the act as to be incapable of distinguishing right and wrong with respect to it, or being able to so distinguish, has suffered such an impairment of mind by disease as to destroy the will power and render him incapable of choosing the right and refraining from doing the wrong, is not accountable. And this is true howsoever such insanity may be manifested, by insane delusions of whatever nature, by irresistible impulse, or otherwise. *Parsons v. State, supra; State v. Jones, supra; Green v. State*, 64 Ark. 523, 43 S. W. 973; *State v. Johnson*, 40 Conn. 136; *Flanagan v. State*, 103 Ga. 619, 30 S. E. 550; *Dacy v. People*, 116 Ill. 385, 6 N. E. 165; *Lilly v. People*, 148 Ill. 467, 36 N. E. 95; *Meyer v. People*, 156 Ill. 126, 40 N. E. 490; *Plake v. State*, 121 Ind. 433, 23 N. E. 273, 16 Am. St. 408; *Bradley v. State*, 31 Ind. 492; *State v. Hockett*, 70 Iowa, 442, 30 N. W. 742; *Shannahan v. Commonwealth*, 8 Bush. (Ky.) 463, 8 Am. Rep. 465; *Banks v. Commonwealth*, 145 Ky. 800, 141 S. W. 380; *Commonwealth, v. Rogers*, 7 Metc. (Mass.) 500, 41 Am. Dec. 458; *State v. Crowe*, 39 Mont. 174, 102 Pac. 579, 18 Ann. Cas. 643; *Dejarnette v. Commonwealth*, 75 Va. 867; Bishop, New Criminal Law, secs. 381-394; 1 Wharton, Criminal Law, 10th ed., secs. 43-45; 1 McLain, Criminal Law, secs. 156-158; 12 Cyc., p. 169, note 50; 16 Am. & Eng. Ency. Law, p. 618.

However, the utmost care should be taken not to confuse such mental disease with moral obliquity, mental de-

pravity, or passion arising from anger, hatred, revenge, and kindred evil conditions, for where the act is induced by any of these causes the perpetrator is accountable to the law. The question of the mental condition of a defendant at the time in respect to the act should go to the jury for its determination as matter of fact upon all the evidence adduced, under general instructions defining the scope of the inquiry.

Error is assigned to the admission over objection of testimony of three witnesses, Claude Coffin, E. D. Avery and Louise Avery Crose, wife of deceased, which tended to show the relations existing between the deceased and the defendant. Counsel assert that this was an attempt to vindicate the character and conduct of the deceased, and had no proper place in the trial as rebuttal, or at all. It may be said of some of this testimony that it was hearsay in character, and should have been excluded, particularly that of Louise Avery Crose, the widow, as to certain remarks made by her deceased husband, and the substance of certain telephonic messages between him and other persons, concerning the conduct of defendant, the admission of which was manifestly erroneous. So much of it was given by those who testified from personal knowledge of the relations between the deceased and the defendant was competent, more properly admissible in chief than rebuttal, to be considered and weighed with all other evidence adduced in the case.

Complaint is also made of alleged remarks by the special prosecutor in his closing argument to the jury, among others one that the defense of insanity is a disgrace to American jurisprudence, which it is said were permittted to go to the jury despite objection. The matter is not contained in the bill of exceptions, but is presented by affidavit of counsel, and is therefore not properly here for consideration. Had such statement been made to the jury, it would

have been not only highly improper and reprehensible, but if preserved with objections and exceptions, might constitute reversible error. This suggestion certainly ought to be sufficient to preclude the possibility of improper conduct of this character on the part of the district attorney at another trial.

The judgment is reversed and the same remanded for a new trial according to the views herein expressed.

Decision *en banc*.

Chief JUSTICE GABBERT, Mr. JUSTICE WHITE and Mr. JUSTICE GARRIGUES dissent.

Decided November 1, A. D. 1915. Rehearing denied January 3, A. D. 1915.