## Richmond

CALVIN MICHAEL AREY V. C. C. PEYTON, SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

December 6, 1968.

Record No. 6775.

Present, Eggleston, C.J., Buchanan, Snead, Carrico, Gordon and Harrison, JJ.

*Richard S. Glasser* for plaintiff in error.

*Edward J. White, Assistant Attorney General (Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General;* on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The question in this case is whether the court below erred in not allowing Arey, herein referred to as petitioner, a full evidentiary hearing before denying and dismissing his petition for a writ of habeas corpus.

In April and May, 1965, upon his pleas of guilty, petitioner was convicted by the Corporation Court of the City of Norfolk of three armed robberies and of attempted murder in the first degree. On July 20, 1965, after the court received a pre-sentence report, it sentenced petitioner to a term of ten years in the State penitentiary upon each conviction, one term to run concurrently with another term, or a total term of thirty years.

On March 23, 1966, petitioner *pro se* filed a petition for a writ of habeas corpus in the court below. He alleged, in essence, that his convictions were void because he had received ineffective assistance of court-appointed counsel at his trials, in that counsel did not raise as a defense that petitioner was a compulsive, chronic alcoholic and under the influence of intoxicants at the time he committed the crimes for which he was convicted. Only recently, he said, through time-effected sobriety, had he realized the enormity of his acts.

After attorney Richard S. Glasser was appointed to represent petitioner in the habeas corpus proceeding, the court, on motion of counsel, committed petitioner to Southwestern State Hospital in June, 1966, for observation and report as to his current mental condition and "if possible his mental condition on the 6th and 8th days of March, 1965, the date[s] of the offenses for which he stands convicted."

Subsequently, on December 8, 1966, petitioner, by counsel, filed an amendment to the original petition alleging that incriminating statements had been illegally obtained from petitioner following his arrest, and complaining about conditions of his incarceration.

On January 31, 1967, a hearing was held in the court below on the habeas corpus petition, as amended. Counsel for respondent Peyton moved the court to consider the existing records in the same court of the criminal proceedings against petitioner, which were available, and to dismiss the habeas corpus petition on the basis of what was shown in the records. Petitioner's counsel opposed this motion.

After reviewing the records of the 1965 criminal proceedings and hearing argument of counsel, the court found that these records showed that after receiving adequate advice of counsel and after full inquiry by the court, petitioner had intelligently and voluntarily pleaded guilty to the charges against him.

The court also found that the petitioner was mentally competent on March 6 and 8, 1965, when the crimes were committed. However, the court allowed petitioner to call and examine Dr. Blalock, Superintendent of the Southwestern State Hospital, and Dr. Gibbs, a psychiatrist, both of whom had filed reports as to the mental condition of petitioner. Dr. Blalock had given the opinion in his report dated July 26, 1966, that petitioner "is not now psychotic or insane," and was mentally competent to stand trial; and, based on information obtained from petitioner, that petitioner was mentally competent when the crimes were committed; but in testifying he agreed that the latter conclusion was necessarily speculative. Dr. Gibbs had stated in his report dated June 6, 1966, that an adequate psychiatric examination could determine petitioner's present mental state but that one could only speculate about his condition in March, 1965. He expressed a similar opinion in his testimony.

After hearing their evidence, the court affirmed its conclusion that petitioner was mentally competent when he committed the crimes and therefore there had been no defense connected with alcoholism which counsel failed to raise. The court then denied and dismissed the habeas corpus petition.

We granted petitioner a writ of error and he now contends that the court below erred in not hearing other evidence in support of his allegations and asks this court to reverse the judgment below and remand the case for a full evidentiary hearing.

In some cases the allegations of a petition for habeas corpus are patently frivolous and plainly do not justify judicial inquiry. *Cf. Darnell* v. *Peyton*, 208 Va. 675, 678, 160 S. E. 2d 749, 751. In other cases the merits of the allegations may be determined by reference to records of previous judicial proceedings. *Cf. Morris* v. *Smyth*, 202 Va. 832, 834, 120 S. E. 2d 465, 466. In such cases a full evidentiary hearing may not be required.*

If the records of petitioner's criminal trials contained matters sufficient to refute the essential factual allegations of his habeas corpus petition, the court below did not err in not allowing him to present other evidence concerning those allegations.

---

*In 1968 the Virginia General Assembly amended Code § 8-596, relating to habeas corpus, to provide, *inter alia:*

"(4) In the event the allegations of illegality of the petitioner's detention can be fully determined on the basis of recorded matters, the court or judge thereof in vacation may make its determination whether such writ should issue on the basis of the record." 1968 Acts, ch. 487, p. 699.

The transcript of petitioner's criminal trials showed that on April 27, 1965, petitioner and Rosemary Horn, who had been traveling with petitioner as his wife, were arraigned on five indictments, three against petitioner—two charging armed robbery and one charging attempted murder; and two against Rosemary Horn—charging armed robbery. Each defendant was represented by a previously appointed attorney. William E. Fulford had been appointed on March 30, 1965, to represent petitioner.

Petitioner entered pleas of guilty to the three indictments against him. Before accepting the pleas the court made a searching inquiry to ascertain that petitioner understood his rights and alternatives. Petitioner, in answer to the court's questions, stated that he knew of his right to plead not guilty and to be tried by a jury; that he desired to be tried by the court; that he understood the consequences of pleading guilty, having discussed the matter with his attorney; that his pleas were not influenced by counsel or anyone else; that he had no complaints against the police officers; that he was pleased with counsel's conduct of his case; that he had no witnesses whom he wished called to testify.

He also stated that he understood that he and Rosemary Horn could be tried separately and that he could have separate trials on each of the indictments pending against him, but that he wanted to be tried with Rosemary Horn and wanted the three indictments tried together.

The Commonwealth then presented testimony of two complaining witnesses—employees of service stations—who identified petitioner and told of his taking money from their places of employment while holding them at gunpoint.

A Norfolk police officer told of pursuing a car driven by petitioner shortly after one of the robberies; of petitioner stopping his car and fleeing on foot; of petitioner, during the foot chase, dropping to the ground, aiming a pistol at the officer who was a short distance away and pulling the trigger two or three times.

The Commonwealth also introduced in evidence two statements given by petitioner on the morning of March 8, 1965, shortly after his arrest by the officer whom he had attempted to shoot. The police officer who presented the statements testified that they were freely and voluntarily given by petitioner without threats or promises by the police. The statements said the same thing. One of the statements contained the specific warning, "Remember, you don't have to give

this statement. If you do make a statement, you know it can be used for or against you in court?" and petitioner's affirmative reply.

In the statements petitioner admitted the two robberies and said: "I was drunk when I did it. The reason I did it, I needed the money." He needed it, he said, for an operation for Rosemary.

On May 26, 1965, petitioner was arraigned on the third indictment charging robbery. He pleaded guilty and the court again ascertained that he understood his rights and alternatives and that he was satisfied with his attorney. In response to questions by counsel Fulford, petitioner acknowledged that Fulford had been to see him eight to ten times and that there was nothing which he had asked Fulford to do which Fulford had not done.

The Commonwealth then presented testimony by the complaining witness who told of petitioner's robbing him at gunpoint. Police officers testified that the complaining witness identified petitioner from a police lineup.

On July 20, 1965, after the court had received the pre-sentence report on petitioner but prior to passing sentence, petitioner again stated that he was satisfied with his counsel.

Despite the above-recited evidence contained in the records of the criminal proceedings, petitioner says the records were "fatally incomplete" and insufficient to refute the allegations of his habeas corpus petition.

He first points to the allegation of his amended petition that during the post-arrest interrogation by Norfolk police he was not advised of his right to counsel; that interrogation continued after he requested counsel; and that he was not advised of and did not intelligently waive his constitutional privilege against self-incrimination.

Nowhere in his petition for habeas corpus, original or as amended, did petitioner allege that his pleas of guilty were involuntary or that they were induced by the police possession of what he now alleges were illegally obtained confessions.

The records of the criminal proceedings clearly show, as the court below found, that petitioner's pleas of guilty were voluntarily and intelligently entered by petitioner who had the advice of counsel. In addition, the victims of the robberies unequivocally testified that petitioner had robbed them at gunpoint.

The court below properly held that the records of the criminal proceedings refuted his allegations of illegal confessions.

Petitioner also alleged in his habeas corpus petition that he received

ineffective assistance of counsel because the attorney who represented him at his preliminary hearing was replaced by Fulford in the trial court.

When petitioner made this complaint the court below stated that it was the practice there for the court of record to appoint different counsel, because it was found that some lawyers were "soliciting" cases in the Police Court where the preliminary hearings were held; and also because it was the court's duty to appoint competent and experienced criminal attorneys to represent defendants at the trial of their cases.

Petitioner says this practice violates Code § 19.1-241.1, as amended.

When petitioner was tried in 1965, § 19.1-241 had been amended by Acts 1964, ch. 657, by adding §§ 19.1-241.1 through 19.1-241.6. Section 19.1-241.3 thereof provided that if the proceeding is before a court not of record and the defendant is indigent, the court shall appoint counsel who shall represent defendant at the preliminary hearing "and at other stages of the proceedings until relieved or replaced in the manner provided by law."

These statutes deal with matters of procedure, and petitioner's constitutional right to effective assistance of counsel was not violated by the appointment of other counsel to represent him on his trials.

Neither did his counsel fail to render effective assistance to petitioner in not contending at the trial that petitioner should be found not guilty because he was an alcoholic. The evidence wholly failed to show that petitioner was not responsible for his acts for this or any other reason. Petitioner said that the reason he committed the robberies was that he needed the money. He said he was drunk but he did not claim that he did not know that he was doing wrong. The duty of his counsel did not include making a defense that petitioner did not claim and which there was no evidence to support.

It has long been settled in Virginia that voluntary drunkenness (as distinguished from settled insanity produced by drink) is no excuse for a crime, although it may be the result of long-continued and habitual drinking. See *Longley* v. *Commonwealth*, 99 Va. 807, 37 S.E. 339; *Johnson* v. *Commonwealth*, 135 Va. 524, 529, 115 S.E. 673, 675; 6 Mich. Jur., Drunkenness, § 11, pp. 434 *ff.*

At his trial petitioner freely and voluntarily confessed his guilt, as stated, and entered his pleas of guilty which were accepted by the court only after a careful investigation which established that he fully

understood the nature and effect of his pleas and that they were voluntarily made, with no compulsion from any source.

In *Crutchfield* v. *Commonwealth*, 187 Va. 291, 296, 46 S.E.2d 340, 342, we said:

> "A plea of guilty, accepted and entered by the court, is a conviction or the equivalent of a conviction of the offense to which it is directed, the effect of which is to authorize the imposition of the punishment prescribed by law on a verdict of guilty of the offense admitted. *Hobson* v. *Youell*, 177 Va. 906, 15 S.E.(2d) 76. It waives all defenses other than that no offense is charged." *Cf. Machibroda* v. *U. S.*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, and *Holloway* v. *Warden, Maryland Penitentiary*, Memorandum Order, 4 Cir., June 15, 1965.

Petitioner states that the question presented on this appeal is whether the trial court erred in denying a plenary hearing to present evidence in support of the allegations of his petition for habeas corpus.

We hold that these allegations, stated and discussed above, are fully and conclusively refuted by the records of petitioner's trials, which were properly examined and considered by the trial court, and hence that court did not err in refusing to hear further evidence on the same questions.

The order denying and dismissing the petition for habeas corpus is affirmed.

*Affirmed.*