## CIRCUIT COURT OF FAIRFAX COUNTY

Ralph N. Shambaugh

    v.

Gene M. Johnson,
Director, Virginia
Department of Corrections

January 30, 2007

Case No. CL-2006-2853

BY JUDGE LESLIE M. ALDEN

    This case comes before the Court on a Petition for Writ of Habeas Corpus filed by Ralph N. Shambaugh for loss of good time credits and other disciplinary sanctions resulting from a positive drug test. Shambaugh alleges that his due process and equal protection rights were violated and he seeks restoration of his previous mandatory parole release date of June 26, 2011. Respondent contends that there was sufficient evidence to support the disciplinary conviction, including evidence that the drug test was given according to mandated protocol and evidence that Shambaugh was given an opportunity to be heard at the disciplinary hearing. After a thorough review of

the pleadings and affidavits filed, the court concludes that the petition is without merit. Accordingly, Shambaugh's Petition is dismissed and Respondent's Motion to Dismiss is granted.

## I. *Background*

On June 9, 1995, Shambaugh was sentenced to serve thirty-five years for first-degree murder and conspiracy to murder. On July 21, 2005, while confined at the Coffeewood Correctional Center ("CWCC), Shambaugh failed a drug test given to him by the Virginia Department of Corrections when his urine tested positive for tetrahydrocannabinol ("THC" or "marijuana"). The officer administering the test, Sergeant Morris, showed the results to another officer, who verified the reading. Sergeant Morris also called the medical department to ensure that Shambaugh was not taking any medications that would result in a positive result. The medical department confirmed that Shambaugh was not taking any medication. As a result of the drug test, Shambaugh was placed in pre-hearing detention and was offered the opportunity to consent to a penalty offer prior to the penalty hearing. Shambaugh refused the penalty offer and was served a Notice of Hearing before the Virginia Office of Corrections on July 22, 2005. On July 25, 2005, Shambaugh requested Officer Washington as a witness based on his belief that Washington did not see a positive test result for THC. Because the request was not filed within 48 hours of the pre-hearing detention, the request was denied.

Shambaugh attended his disciplinary hearing on July 28, 2005, and was given the opportunity to recount his version of the events that took place during his drug test. Shambaugh also read a three page statement before Presiding Officer Jamison. Shambaugh argued that there was insufficient urine in the cup, which could result in inaccurate results. He noted he was not given the opportunity to see the test results and that the testing protocol could have been compromised by Lt. Brice, who also inspected the cup. During the hearing, Sgt. Morris testified that he had followed testing protocol.

After hearing the testimony of Shambaugh and Sgt. Morris, Officer Jamison found Shambaugh guilty of being "under the influence of drugs" and sentenced him to 30 days in isolation and a referral to the Institutional Classification Authority ("ICA"). Shambaugh appealed the disciplinary action to the CWCC Warden. On August 11, 2005, the Warden responded, indicating that, at the hearing, there was a determination that there was sufficient urine in the test sample for accurate results, there is no requirement to show Shambaugh the results, and, because the test was not compromised, there was no violation of testing protocol. The Warden also spoke with Officer

Washington who made general statements about the test. Thus, based on all the facts available, the Warden denied the appeal and upheld the charge.

On August 17, 2005, the ICA reviewed Shambaugh's drug test results and recommended that his security level be increased, which would also decrease the rate at which he earned good time credits. Shambaugh's classification level was changed from a Level 1 to a Level 4. (See Enclosure H to Respondent's Motion to Dismiss and Memorandum in Support.)

On August 30, 2005, Shambaugh appealed to the Regional Director of the Virginia Department of Corrections, adding new information Shambaugh learned after the disciplinary hearing, namely that the test cup was part of a defective batch. (See Disciplinary Appeal Form, Enclosure I to Respondent's Motion to Dismiss and Memorandum in Support.) In his response letter dated September 13, 2005, the Regional Director noted he listened to the tapes of the disciplinary hearing and heard detailed testimony on the testing procedures. Because the argument about defective cups was never raised by Shambaugh at the hearing and because there was no evidence to support the contention, the Regional Director determined the claim was unfounded. Shambaugh's appeal was accordingly denied.

## II. *Shambaugh's Claims*

In his petition, Shambaugh claims:

1. OnTrak TesTcup has a history of defective products;

2. Several inmates were released from segregation when it was determined defective test cups were used;

3. Another inmate was tested four times;

4. Officers involved in Shambaugh's case were demoted or terminated;

5. The drug test was conducted to harass Shambaugh and/or as a practical joke;

6. The Division Operating Procedure requires periodic drug testing for inmates who test positive;

7. His mandatory release date changed from June 26, 2011, to June 3, 2017;

8. Second and periodic drug testing was conducted on other inmates, but he had not received any subsequent tests;

9. He was denied the right to call a witness at his disciplinary hearing;

10. Sgt. Morris failed to follow testing protocol;

11. The test cup was defective based on an alleged conversation between himself and a corrections officer.

Shambaugh asserts that his disciplinary conviction was based on "no evidence" at all. Shambaugh also claims that his disciplinary conviction violates the Fifth and Fourteenth Amendments to the Constitution of the United States and that he is entitled to habeas corpus relief and restoration of his previous parole release date of June 26, 2011. Shambaugh requests an evidentiary hearing to support these claims. The court will address each of these assertions.

### III. *Analysis*

#### A. *Use of a Petition for Writ of Habeas Corpus*

It is well established that prisoners in state institutions are not "wholly stripped" of their constitutional rights, including the right to equal protection and due process. *See Wolff v. McDonnell*, 418 U.S. 538, 555 (1974). To ensure an inmate's equal protection and due process rights are not infringed upon, there are procedural safeguards for the loss of good time credits which would prolong a prisoner's stay in jail. *Wolff*, 418 U.S. at 555. Accordingly, if an inmate contends that his constitutional rights have been violated at a disciplinary hearing, filing a writ of habeas corpus for loss of good time credits is an appropriate action. *See Wolff*, 418 U.S. at 555.

#### B. *Request for an Evidentiary Hearing*

Under Virginia law, if the allegations of illegality surrounding a petitioner's detention can be fully determined on the basis of recorded matters, a habeas court may rule on the petition based solely upon the record. Va. Code Ann. § 8.01-654(B)(4); *Yeatts v. Murray*, 249 Va. 285, 289, 455 S.E.2d 18, 21 (1995). For a writ of habeas corpus to be granted, the petitioner must allege facts which establish "probable cause to believe that he is detained without lawful authority." Va. Code Ann. § 8.01-654(A). In determining whether probable cause exists, Virginia courts have discretion in deciding when to grant an evidentiary hearing. Va. Code § 8.01-654(B)(4); *Yeatts*, 249 Va. at 290, 455 S.E.2d at 21. It is elementary that a petition of this nature must allege facts, thus, mere conclusions or opinions of the pleader will not suffice or make out a case. *Penn v. Smyth*, 188 Va. 367, 370-71, 49 S.E.2d 600, 601 (1948).

Where the "records of petitioner's criminal trials contain matters sufficient to refute the essential factual allegations of his habeas corpus petition," no evidentiary hearing is required. *Arey v. Peyton*, 209 Va. 370,

372, 164 S.E.2d 691, 693 (1968). Virginia law is clear that affidavits filed in habeas proceedings may be considered in determining whether an evidentiary hearing is necessary. *Yeatts*, 249 Va. 289, 455 S.E.2d at 21. Accordingly, if, after full consideration of (1) the factual allegations set out in a petition for writ of habeas corpus and all reasonable inferences which flow therefrom, (2) the record of the underlying disciplinary hearing, and (3) any affidavits submitted by the parties, a court determines that reasonable minds could not differ as to whether the habeas petitioner is entitled to relief, then no plenary hearing should be heard. The court will review each of Shambaugh's claims utilizing this standard.

## C. *Shambaugh's Claims*

Shambaugh's claims include factual and legal allegations. Claims 1, 2, 3, 5, 8, 10, and 11 contain factual allegations that were brought before the disciplinary board, the Warden, and the Regional Director on appeal. Claims 7 and 9 speak to Shambaugh's claim of due process and equal protection, and claims 4 and 6 are factual allegations regarding situations that occurred after the hearing.

To determine whether Shambaugh was afforded due process and equal protection at the disciplinary hearing itself, this court must determine whether Shambaugh was able to present exculpatory evidence and whether the hearing officer came to a reasonable determination based on the evidence presented at the hearing. The court need only decide whether the disciplinary hearing determination was based on "some evidence," in the disciplinary record. *Superintendent v. Hill*, 472 U.S. at 455-56 (that a due process determination "does not require the examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence").

If any evidence exists to support the charge and if a reasonable decision maker could have found a disciplinary violation, due process is satisfied. *Henderson v. United States Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994).

## 1. *Due Process Claim*

While prisoners are not deprived of their constitutional rights, the "fact that prisoners retain rights under the Due Process Clause does not imply that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556. Courts recognize that a balance must be observed between establishing institutional

safety and ensuring that prisoners are afforded their constitutional rights. Because of these competing interests, an inmate at a disciplinary hearing is not entitled to the same rights as a defendant at a criminal trial. *Id.* This was pronounced by the Supreme Court in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985), in which the court held that facts need not be proven "beyond a reasonable doubt" because the "revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than "some evidence" applies in this context." *Hill*, 472 U.S. at 454.

A proceeding to consider the revocation of good time comports with the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445 (1985). Although the evidence in *Hill* was found to be meager, "the record was not so devoid of evidence that the findings of the disciplinary board were without support or otherwise were arbitrary." *Hill*, 472 U.S. at 457. Thus, the fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. *Id.* at 456.

In order to ensure that a prisoner is afforded his due process rights in a disciplinary hearing, he should be given (1) advance notice of the disciplinary proceedings, (2) an opportunity to call witnesses and present evidence in his defense, so long as it is consistent with institutional safety and correctional goals; and (3) a written statement by a factfinder indicating which evidence was relied upon to reach its conclusion. *Wolff*, 418 U.S. at 562.

As indicated in the allegations set out by Shambaugh and by other affidavits in the record, after the drug test was given, Shambaugh was given an option to sign a plea agreement. When he refused the agreement, he was promptly given notice of the date of his disciplinary hearing. Shambaugh attended the hearing and read from a prepared statement. (See Enclosure J to Respondent's Motion to Dismiss and Memorandum in Support.)

The officer presiding over the hearing was Officer Jamison, who at the time was the Inmate Hearing Officer of the CWCC. In order to satisfy the impartiality requirement, a hearing officer cannot be the reporting officer, a witness to the incident, or play some role in the charges to be discussed at the hearing. See, e.g. *Noesi v. Bledsoe*, 2006 WL 167498 (W.D. Va. January 20, 2006). Based on all affidavits in the record, including Shambaugh's affidavit, Jamison was not the reporting officer, was not a witness to the incident, and

did not play any other role in the charges he heard. Therefore, he was an impartial hearing officer capable of making a fair determination of Shambaugh's claims.

Although Shambaugh's request for Officer Washington to appear as a witness in the hearing was denied, the record reflects that the request was denied because the request was not timely filed. In his petition for habeas corpus, Shambaugh contends that he filed the request in a timely fashion. However, a review of the documents in the record reveals there is evidence to support the denial of the witness. There is no indication that the witness request would have been denied had it been filed on time.

On August 1, 2005, fours day after the hearing, Shambaugh was given notice of the determination made by the disciplinary board. (Enclosure E, Respondent's Motion to Dismiss and Memorandum in Support.) After appealing, Shambaugh received a determination by the Warden denying his request for appeal, noting that there was an adequate determination by the Hearing Officer about the urine test results and response of Officer Washington. The Warden made his determination based on tapes of the hearing and a review of the manufacturer's instructions for performing drug tests. (See Enclosure G of Respondent's Motion to Dismiss and Memorandum in Support.) On August 30, 2005, Shambaugh appealed to the Regional Director of the Department of Corrections. (See Enclosure I to Respondent's Motion to Dismiss and Memorandum in Support.) On September 13, 2005, the Regional Director denied the appeal.

Accordingly, after full consideration of (1) the factual allegations set out in a petition for writ of habeas corpus and all reasonable inferences which flow therefrom, (2) the record of the underlying disciplinary hearing, and (3) all affidavits submitted by the parties, this Court has determined that reasonable minds could not differ as to the conclusion that Shambaugh was given a full and fair hearing necessary for him to have given the opportunity to file a timely request for a witness, was able to argue in his defense at the hearing and present sufficient evidence to demonstrate his position, and was informed in writing about the disciplinary determination by Officer Jamison. Officer Jamison's determination was based on factual information in the record, thus negating a due process claim. Officer Jamison's determinations were held to be valid by the Warden and the Regional Director. Based on this information, Shambaugh's due process rights have not been violated.

## 2. *Due Process Denial of Exculpatory Evidence*

Shambaugh argues that, because he was denied testimony of a staff member during disciplinary hearings and he has reason to believe the test results were not accurate, he has been denied his right to exculpatory evidence. He cites to *Brady v. Maryland*, 373 U.S. 83 (1963); *Piggie v. Cotton*, 344 F.3d 674 (7th Cir. 2003); and *Bostic v. Carlson*, 884 F.2d 1267 (9th Cir. 1989), to support the proposition that he is entitled to present exculpatory evidence in a prison disciplinary hearing. However, this right is observed in a disciplinary hearing, "so long as it is consistent with institutional safety and correctional goals." *Wolff*, 418 U.S. at 563.

Here, consistent with institutional rules, because Shambaugh did not file his request for a witness within 48 hours, he did not timely seek the testimony of the witness. The correctional facility deadline for requesting witnesses is reasonable. Shambaugh, however, did testify at the hearing. Based on the record, Shambaugh discussed the amount of urine in the test cup, the procedures used in performing the test, and Officer Washington's inspection of the cup at the disciplinary hearing. (Petitioner's Affidavit ¶ 12.) He raised the issue of the cups being defective on his appeal of the Warden's denial of a disciplinary appeal. (Petitioner's Affidavit ¶ 18.) Officer Jamison took the initiative to speak to Officer Washington to determine whether there was evidence that should be considered prior to making a disciplinary determination. Based on all this information, the disciplinary board came to its conclusion. Thus, Shambaugh's claim of denial of due process with respect to calling a witness is without merit.

## 3. *Equal Protection in the Disciplinary Hearing*

Shambaugh alleges a denial of equal protection rights afforded by the Fourteenth Amendment because he was denied exculpatory evidence from staff witness and prisoner official testimony at his disciplinary hearing. (Petition for Habeas Corpus at p. 3.) To prevail on an equal protection claim, the burden is on the petitioner to demonstrate that the was subjected to unequal treatment that was not rationally related to a legitimate governmental purpose, namely a state penological interest. *Kaliq v. Angelone*, 72 Fed. Appx. 895 (4th Cir. 2003), quoting *Moss v. Clark*, 886 F.2d 686 (4th Cir. 1989). In addition, he must allege that he was treated differently than other similarly situated inmates. *Garrett v. Angelone*, 39 Va. Cir. 307, 312 (1996).

Shambaugh does not allege any facts which would support the argument that he was subjected to unequal treatment before or during the disciplinary hearing. Shambaugh was able to present any evidence he felt was exculpatory to the hearing board. He was given the opportunity to call witnesses, to present evidence at the hearing, and appeal the determination twice. As discussed above, his inability to call a witness was based on an institutionally set deadline to which he failed to adhere. There is no indication he would have been denied the witness had his request been filed in a timely fashion, nor is there evidence that other inmates have been able to present witnesses who were untimely identified.

Shambaugh's claims about other inmates receiving multiple tests in one day or being released from confinement despite their positive drug tests are unsubstantiated conclusory remarks. As noted in *Garrett*, because no inmate has the exact same criminal history as another inmate, a petitioner cannot demonstrate purposeful discrimination by comparing his treatment to criminals with different histories. *Garrett*, 39 Va. Cir. at 312. In addition, officials may treat similarly situated inmates differently if the disciplinary hearing's determination is rationally related to a legitimate prison interest. *Moss v. Clark*, 886 F.2d 686 (4th Cir. 1989). Here, regardless of the treatment of other inmates, there is insufficient evidence to support Shambaugh's equal protection claim. Because Shambaugh's disciplinary hearing determination was based on some evidence in the record and because he was afforded all procedural requirements listed in *Wolff*, his equal protection claim is without merit.

## IV. *Conclusion*

This court finds that Shambaugh's relevant factual claims were brought before the disciplinary board during the disciplinary hearing and to the appropriate officer in charge of assessing Shambaugh's appeals.

Because the records in this case contain matters sufficient to determine whether to grant an evidentiary hearing, the request is denied. Further, for all the reasons discussed, Shambaugh has not demonstrated that his due process and equal protection rights were violated. Accordingly, Respondent's Motion to Dismiss is granted and the Petition for Writ of Habeas Corpus is dismissed.